494 F.2d 885
 David J. BRANDENBURGER, for himself and all other persons
similarly situated, Plaintiffs-Appellants, and
Clyde E. Reighard, Plaintiff-Intervenor,
v.
Myron B. THOMPSON, Individually and in his capacity as duly
appointed Director of the Department of Social
Services and Housing of the State of
Hawaii, Defendant-Appellee.
 No. 72-2224.
 United States Court of Appeals, Ninth Circuit.
 March 25, 1974.
 
 John S. Edmunds (argued), Mattoch, Edmunds, Kemper & Brown, Peter A. Lee, Legal Aid Society, Honolulu, Hawaii, J. Anthony Kline, Public Advocates, Inc., San Francisco, Cal., for plaintiffs-appellants.
 Robert P. Jaress, Deputy Atty. Gen. (argued), George Pai, Atty. Gen. of Hawaii, Honolulu, Hawaii, for defendant-appellee.
 Before KOELSCH, WRIGHT and TRASK, Circuit Judges.
 OPINION
 EUGENE A. WRIGHT, Circuit Judge:
 
 
 1
 Brandenburger appeals from a denial of his motion for reasonable attorneys' fees following the entry of a consent judgment. We reverse and remand.
 
 
 2
 In Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), the Supreme Court ruled unconstitutional state statutes denying welfare benefits to residents who had not resided within the state for at least one year immediately preceding their application for assitance. Two years later, in 1971, Hawaii established as a condition of eligibility for state welfare benefits a one-year durational residency requirement substantially identical to those struck down in Shapiro. Relying on Shapiro, Brandenburger brought this suit under 42 U.S.C. 1983, for himself and all others similarly situated, challenging the constitutionality of the Hawaii statute and seeking injunctive relief against the defendant, the Director of Hawaii's Department of Social Services. Prior to the entry of judgment, he also moved for an award of reasonable attorneys' fees relying on the dual bases of Hawaii's alleged bad faith and the 'private attorney general' doctrine.
 
 
 3
 Prior to trial, the defendant abandoned his position and stipulated to judgment in favor of plaintiff. Plaintiff thereafter moved for attorneys' fees, the question was reserved for decision and, after a hearing, the motion was denied. The district judge filed no written opinion, but his oral comments reveal two bases for his decision. First, he believed that he should not award attorneys' fees to the plaintiff since the defendant had not acted in bad faith. Second, he believed that an award of attorneys' fees to Brandenburger would be improper since he was represented, without charge, by the American Civil Liberties Union.[1] Brandenburger's appeal is from that portion of the judgment denying his motion for reasonable attorneys' fees.[2]
 
 I.
 
 4
 Although American courts historically have not awarded attorneys' fees to successful litigants without explicit statutory or contractual authority, see Fleischmann Distilling Corp. v. Maier Brewing Co.,386 U.S. 714, 717-718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967); Ehrenzweig, Reimbursement of Counsel Fees in the Great Society, 54 Calif.L.Rev. 792, 793 (1966),[3] federal courts have equitable power, in the absence of legislation, to award attorneys' fees in the interest of justice. Hall v. Cole, 412 U.S. 1, 4-5, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391-392, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). Thus, even though 1983 does not explicitly authorize an award of attorneys' fees, the court's equitable power may be invoked to make such an award in appropriate cases. See e.g., Sims v. Amos, D.C., 340 F.Supp. 691 (Three-Judge Court, per curiam), aff'd mem. Amos v. Sims, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972) (1983); cf. Knight v. Auciello, 453 F.2d 852 (1st Cir. 1972) (1982); Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971) ( 1982).[4] And an award of attorneys' fees assessed against a state official acting in his or her official capacity is not proscribed by the Eleventh Amendment. Sims v. Amos, supra, 340 F.Supp., at 694 n. 8.
 
 
 5
 We next consider whether the instant case is an appropriate one to exercise the court's power to award attorneys' fees. Plaintiff argues that it is, relying on two bases. First, he argues that Hawaii acted in bad faith. Second, he contends that attorneys' fees should be awarded since he acted as a 'private attorney general.' Since we agree with plaintiff's latter contention, we need not reach and do not consider the issue of bad faith.
 
 
 6
 Under the 'private attorney general' doctrine, an award of attorneys' fees should be made to a litigant who (1) furthers the interests of a significant class of persons by (2) effectuating a strong congressional policy. The award serves the purpose of encouraging such public-minded suits. See Sims v. Amos, supra, at 694-695; Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); Miller v. Amusement Enterprises, Inc., 426 F.2d 534 (5th Cir. 1970); Lee v. Southern Home Sites, supra; La Raza Unida v. Volpe, 57 F.R.D. 94 (N.D.Cal.1972). Under this doctrine, the good or bad faith of the defendant is irrelevant. Sims v. Amos, supra 340 F.Supp. at 694-695.
 
 
 7
 The instant case falls squarely within the ambit of the 'private attorney general' doctrine. The plaintiff benefited a significant class, persons who are both potential welfare recipients and interstate travelers, by vindicating the federally protected right of interstate travel free from the forfeiture of welfare benefits. And, since 1983 expresses a strong policy of vindicating federal constitutional rights against infringement by state officials, id. at 694, the plaintiff furthered congressional policy by challenging the Hawaii statute.
 
 
 8
 Because the plaintiff met the requirements of a 'private attorney general,' the district court should have granted his motion for attorneys' fees.[5] While an award of attorneys' fees is generally discretionary, see e.g., Hall v. Cole, supra 412 U.S. at 15, 93 S.Ct. 1943, when a litigant qualifies as a 'private attorney general,' 'the award loses much of its discretionary character and becomes a part of the effective remedy a court should fashion to encourage publicminded suits . . . and to carry out congressional policy.' Sims v. Amos, supra 340 F.Supp. at 694, citing Mills v. Electric Auto-Lite Co., supra; Lee v. Southern Home Sites, supra. Cf. also, Anderson v. Pass Christian Isles Golf Club, Inc., 488 F.2d 855, 858 (5th Cir. 1974). Therefore, a remand on the issue whether an award should be given in this case is unnecessary.
 
 II.
 
 9
 The district court's second basis for denying plaintiff's motion for attorneys' fees was that they should not be awarded to a litigant who was represented without charge by a public interest group, here the American Civil Liberties Union. But the fact that the plaintiff was not obligated to pay the ACLU for its services is not a bar to an award of attorneys' fees. All that is required is the existence of an attorneyclient relationship. See Miller v. Amusement Enterprises, Inc., supra.[6]
 
 
 10
 The policy underlying the 'private attorney general' doctrine supports this conclusion. It is true that the prospect of attorneys' fees does not discourage the litigant from bringing suit when legal representation is provided without charge. But the entity providing the free legal services will be so discouraged, and an award of attorneys' fees encourages it to bring public-minded suits when so requested by litigants who are unable to pay. Thus, an award of attorneys' fees to the organization providing free legal services indirectly serves the same purpose as an award directly to a fee paying litigant. See Note, Awards of Attorneys' Fees to Legal Aid Offices, 87 Harv.L.Rev. 411 (1973). Of course, the award should be made directly to the organization providing the services to ensure against a windfall to the litigant. Miller v. Amusement Enterprises, Inc., supra 426 F.2d at 539.
 
 
 11
 In so far as the judgment of the district court did not award attorney's fees to the plaintiff, it is reversed. The case is remanded to the district court for a determination of the amount of a reasonable fee to be paid to the ACLU.[7]
 
 
 12
 Reversed and remanded.
 
 KOELSCH, Circuit Judge (specially concurring):
 
 13
 The majority rests decision upon the easy pronouncement that 'under the 'private attorney general' doctrine, an award of attorneys' fees should be made to a litigant who (1) furthers the interests of a significant class of persons by (2) effectuating a strong congressional policy'. The many cases and commentators indicate no such general test, and I decline to uncritically join in giving it currency. Instead, in reaching my conclusion, I choose to follow a well established rule having clear guideposts.
 
 
 14
 The material facts are undisputed. The Legislature of Hawaii, at its regular session in 1971, enacted a bill which imposed a one-year durational residency requirement as a condition of eligibility for public assistance benefits provided by the State.
 
 
 15
 Shortly afterward Brandenburger, personally and as representative of a purported class, commenced this suit under 42 U.S.C. 1983, against the State Director of the Department of Social Services, whose duty it was to administer the statute. Relying upon Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), he charged that the one-year requirement violated the equal protection provision of the Fourteenth Amendment; he requested injunctive relief and, in addition, a monetary allowance for the services of his attorneys in the litigation.
 
 
 16
 At the request of the district judge, a three-judge court was duly created to hear and determine the cause; but before the matter went to trial, he issued an order to the defendant to show cause why, in the light of the rule in Shapiro, defense of the action would not be frivolous. Defendant immediately capitulated and stipulated to entry of a judgment striking down the residency requirement; however, the matter of attorneys' fees was reserved for decision.
 
 
 17
 The judge denied the fees. His reasons are not entirely clear. He filed no written opinion, but his oral observations tend to indicate that decision was rested variously upon a supposed lack of power, a view that although power existed, no award should be made because no bad faith was shown, or a belief that an allowance of attorneys' fees was largely impermissible where, as here, the litigation was prosecuted without charge to Brandenburger by the A.C.L.U. This appeal followed.
 
 
 18
 (1) Section 1983, upon which plaintiffs' action was predicated, contains no provision for attorneys' fees. However, this does not end the inquiry. The Supreme Court, only recently, in Hall v. Cole, 412 U.S. 1, 4-5, 93 S.Ct. 1943, 1945, 36 L.Ed.2d 702 (1973), has carefully pointed out that:
 
 
 19
 'although the traditional American rule ordinarily disfavors the allowance of attorneys fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys fees when the interests of justice so require. Indeed the power to award such fees 'is part of the authority of the chancellor to do equity in a particular situation.' Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 166, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939), and federal courts do not hesitate to exercise this inherent equitable power whenever 'overriding considerations indicate the need for such a recovery.' Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391-392, 90 S.Ct. 616, 625, 24 L.Ed.2d 593 (1970).'And a number of federal courts have, and I think correctly, held that this 'inherent equitable power' to award attorneys' fees extends to suits under Section 1983 and related statutes. See Knight v. Auciello, 453 F.2d 852 (1st Cir. 1972); Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971); Cooper v. Allen, 467 F.2d 836 (5th Cir. 1972); Callahan v. Wallace, 466 F.2d 59 (5th Cir. 1972); Donahue v. Staunton, 471 F.2d 475 (7th Cir. 1972). See also, Kelly v. Guinn, 456 F.2d 100 (9th Cir. 1972). Thus I conclude that, to the extent judgment was predicated upon a lack of power, the court was in error.
 
 
 20
 (2) Whether attorneys' fees should be awarded in a proper case, of course, involves a determination of the equities and, generally, an exercise of discretion.
 
 
 21
 'It is unquestioned that a federal court may award counsel fees to a successful party when his opponent has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.' Hall v. Cole, supra.
 
 
 22
 Here, the district court concluded that defendant had not acted in bad faith. Such a finding would perhaps be correct with respect to defendant's conduct in the lawsuit itself. But the real inquiry, as Brandenburger argues, should be upon the defendant's conduct which precipitated this litigation, with particular attention to the question whether Shapiro was dispositive and, if so, whether defendant's failure to follow that decision constituted bad faith. I conclude that the answer is 'yes.'
 
 
 23
 In Shapiro, the Supreme Court struck down statutes of several jurisdictions[1] which contained requirements identical to those appearing in the Hawaii statute. The Court's rationale, in substance, was that the durational residency requirement violated the Equal Protection Clause of the Fourteenth Amendment, because it created an impermissible classification between short- and longer-duration residents which was not justified by a compelling state interest. In answer to the defendant's argument that discouraging the influx of potential welfare recipients protected the fiscal integrity of their welfare programs, and that this purpose constituted such a compelling interest, the Court responded:
 
 
 24
 'We do not doubt that the one-year waiting-period device is well suited to discourage the influx of poor families in need of assistance. 'An indigent who desires to migrate, resettle, find a new job, and start a new life will doubtless hesitate if he knows that he must risk making the move without the possibility of falling back on state welfare assistance during his first year of residence, when his need may be most acute. But the purpose of inhibiting migration by needy persons into the State is constitutionally impermissible.' 394 U.S. at 629, 89 S.Ct. at 1328.
 
 The Court further emphasized:
 
 25
 'We recognize that a State has a valid interest in preserving the fiscal integrity of its programs. It may legitimately attempt to limit its expenditures, whether for public assitance, public education, or any other program. But a State may not accomplish such a purpose by invidious distinctions between classes of its citizens.' 394 U.S. at 632, 89 S.Ct. at 1330.
 
 
 26
 I cannot accept the defendant's argument that the justification for the Hawaii residency requirement differs in any material respect from that unsuccessfully asserted by the defendants in Shapiro. True, the Hawaii legislative committee stated that it 'has . . . carefully considered (its) legislative findings in light of . . . Shapiro v. Thompson * * *. If the sole purpose of the waiting-period requirement is designed to serve no greater purpose than to deter in-migration to Hawaii, it would seem, then, to be clearly unconstitutional.' However, the Committee, having paid lip-service to Shapiro, went on to say that:
 
 
 27
 'Your Committee looks upon the proposed residency requirement as a protective device not only to preserve the fiscal integrity of the State public assistance program, but as a source of relief upon the strain placed upon the State's general revenues necessary to provide other essential services also.
 
 
 28
 * * * The Court in Shapiro does not define what constitutes a 'compelling state interest.' Even though, in our support of the residency requirements we are not endeavoring thereby to deprive the truly needy of shelter, food, and clothing necessary to sustain him through a temporary hardship during the waiting period. However, we are firm in our resolve that there should be exempted from the public welfare rolls those individuals who are capable of earning a living wage but scheme their way into the taxpayer generosity of our citizens.
 
 
 29
 It is essential that some means be found to decrease and reverse the rate of influx of transients who arrive in the State with insufficient funds with which to support themselves and who almost immediately, refusing to seek employment, turn to public assistance for support.
 
 
 30
 Your committee finds that the only effective method by which this can be accomplished is for the State to exercise its right to spend its financial resources as it sees fit by limiting general assistance benefits to those residents who have been in the State for a period of at least one year.'
 
 
 31
 In substance, this latter statement offered the same reasons in support of the Hawaii statute as those emphatically rejected by the Court in Shapiro. As in Shapiro, the Hawaii statute created what 'in effect was (a) nonrebuttable presumption that every applicant for assistance in his first year of residence came to the jurisdiction . . .' for the purpose of collecting welfare benefits to which he should not be entitled. Shapiro, supra, 394 U.S. at 631, 89 S.Ct. at 1330. If the State's goal is deterring fraud, 'it is unreasonable to accomplish this objective by the blunderbuss method of denying assistance to all indigent newcomers for an entire year.' 394 U.S. at 637, 89 S.Ct. at 1333. Neither can the State's other stated objective, to-wit, to encourage new residents to seek work, justify the residency requirement. 394 U.S. at 637-638, 89 S.Ct. at 1333.[2]
 
 
 32
 Moreover, the fact should again be noted that the Hawaii statute was not a pioneer; nor could the defendant justify his refusal to honor claims in the reasonable belief that the statute was valid. In sum, the conclusion is manifest that defendant's enforcement of the statute, in the face of Shapiro, constituted bad faith as a matter of law.[3]
 
 
 33
 (3) That Brandenburger was under no legal obligation to pay his attorneys a fee for services is no bar to an award.
 
 
 34
 As the Fifth Circuit pointed out in Miller v. Amusement Enterprises, Inc., 426 F.2d 534 (5th Cir. 1970):
 
 
 35
 'What is required is not an obligation to pay attorney fees. Rather what-- and all-- that is required is the existence of a relationship of attorney and client, a status which exists wholly independently of compensation, as witness the effective service of counsel in the defense of criminal cases, the assertion of post-conviction habeas remedies, and the now widespread organized services on behalf of the poor.
 
 
 36
 Any other approach would call either for a fictional formal agreement by persons legislatively recognized as frequently unable to pay for such services . . . or a frustration of the congressional scheme to effectuate the policies of the Act through private suits in which, of course, an attorney is a practical necessity.' 426 F.2d at 539.[4]
 
 
 37
 See also, Sanders v. Russell, 401 F.2d 241 (5th Cir. 1968); Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971); Lea v. Cone Mills Corp., 438 F.2d 86 (4th Cir. 1971). Since it is the policy of the courts in such cases to grant fee awards, at least in part, to encourage the bringing of such lawsuits, I agree with the Fifth Circuit that it should be the attorney-client relationship, rather than any formal fee arrangements, which affords the basis for fees in an otherwise proper case. To prevent any unjust enrichment of a party, the court can always exercise its equity powers to 'assure that the fees allowed are to reimburse and compensate for legal services rendered and will not go to the litigants . . .' Miller, supra, 426 F.2d at 539.
 
 
 38
 In sum I conclude that the district court possessed the power to award counsel fees in this case; that the relationship between plaintiff and his attorneys was such as to permit the award of such fees; that the refusal to make an allowance constituted an abuse of discretion;[5] that the judgment, so far as it disallows attorneys' fees, should be accordingly reversed; and the cause remanded to the district court with directions to determine a reasonable fee and to enter judgment for plaintiff.
 
 
 39
 1. It should be noted that the district court's action was taken prior to the Supreme Court's affirmance of Sims v. Amos, 340 F.Supp. 691 (Three-Judge Court, per curiam), aff'd mem., Amos v. Sims, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972). The district court did not consider the 'private attorney general' doctrine.
 
 
 
 [2]
 The judgment was entered and the motion for attorneys' fees was denied by a singlejudge district court. Therefore, this court has jurisdiction on appeal pursuant to 28 U.S.C. 1291. Because the plaintiff sought to enjoin enforcement of a state statute on constitutional grounds, a three-judge court was convened under 28 U.S.C. 2282. The court then ordered the defendant to show cause why its defense was not precluded under prior decisions thereby eliminating the need for a three-judge court under Bailey v. Patterson, 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). The state then stipulated to judgment. Thereafter, all actions taken by the court, including the entry of judgment, were by the district judge purporting to act as a single-judge district court. While there was no formal dissolution of the three-judge court, it is clear from the record that the court and the parties considered the case to have been remanded to the jurisdiction of the single-judge district court. We treat the case accordingly
 
 
 [3]
 For analysis and criticism of this historical doctrine, see Stoebuck, Counsel Fees Included in Costs: A Logical Development, 38 U.Colo.L.Rev. 202 (1966); Kuenzel, The Attorneys' Fee: Why Not a Cost of Litigation?, 49 Iowa L.Rev. 75 (1963)
 
 
 [4]
 It is clear, however, that federal courts do not have the power to award attorneys' fees in every suit brought under a federal statute. See, e.g., Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967) (Lanham Act)
 
 
 [5]
 Two aspects of this case demonstrate the need for such an award. While the individual plaintiff vindicated the rights of a group of persons, his own monetary interest is not sufficiently large to provide an incentive to bring the suit. See Sims v. Amos, supra, at 695. Also, Hawaii's attorney general, normally the person called upon to act pro bono publico, was unavailable as he was representing the defendant. But while these elements of the case render it acute for an award of fees, neither is necessary to invoke the 'private attorney general' doctrine under its purpose. See Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968), and Miller v. Amusement Enterprises, Inc., 426 F.2d 534 (5th Cir. 1970) (state attorney general not aligned with defendant); A. C. Becken Co. v. Genex Corp., 314 F.2d 839 (7th Cir.), cert. denied, 375 U.S. 816, 84 S.Ct. 49, 11 L.Ed.2d 51 (1963), and other cases compiled in Comment, Attorneys' Fees in Individual and Class Action Antitrust Litigation, 60 Calif.L.Rev. 1656, 1679 (1972) (attorneys' fees awarded in antitrust suits to encourage private enforcement regardless of other financial incentives, including treble damages)
 
 
 [6]
 Miller involved a suit under the Civil Rights Act of 1964 where there is statutory authority for an award of attorneys' fees. But the discussion of awards in cases where the litigant is not obligated to pay for the legal services is equally applicable here
 
 
 [7]
 In determining what is a reasonable fee, the district judge might consider the factors referred to in recent cases from other circuits. See Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir., January 21, 1974); Lindy Bros. Bldrs. Inc. v. American R. & S. San. Corp., 487 F.2d 161 (3rd Cir. 1973)
 
 
 [1]
 Connecticut, Pennsylvania, and the District of Columbia
 
 
 [2]
 Nor did it make any difference on the constitutional issue that the Hawaii welfare program was entirely state funded, rather than federally assisted. Pease v. Hansen, 404 U.S. 70, 92 S.Ct. 318, 30 L.Ed.2d 224 (1971) (per curiam); Cf. Edwards v. California, 314 U.S. 160, 175, 62 S.Ct. 164, 86 L.Ed. 119 (1941)
 
 
 [3]
 The then Attorney General, in fact, issued a legal opinion immediately prior to the time the bill was signed into law in which he expressly advised the Governor that the residency requirement was invalid under Shapiro
 
 
 [4]
 Miller, it is true, arose under the 1964 Civil Rights Act, which includes a provision authorizing fee awards (42 U.S.C. 2000a-3(b)), but that fact is irrelevant to the court's discussion of fees to pro bono counsel inapplicable to this case. Section 1983, like the 1964 Act, has as its purpose the vindication of individual constitutional rights. Suits to enforce these rights under section 1983 can be brought only by individuals; there is no provision in the statute for government-initiated litigation. In many injunctive suits brought under the statute (where there is no possibility for damage awards to attract private attorneys), the plaintiffs are indigents, putting both private and pro bono lawyers in essentially the same situation-- they cannot realistically look to their clients for payment for either legal services or other litigation costs. Whatever they might expect to receive as a fee for services would come only from the defendant, via court-awarded counsel fees
 In this action, for example, the plaintiffs are welfare recipients. Had they entered into a fee arrangement either with a private or a 'charity' lawyer, such arrangement could have been largely illusory, except to the extent that it might provide that counsel would receive whatever fees the court might award.
 
 
 [5]
 In light of my conclusion that the record manifests the defendant's bad faith, I have no occasion to consider Brandenburger's alternative theory for recovery of counsel fees, i.e., that Brandenburger acted as a 'private attorney general,' vindicating strong public policy. See, e.g., Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968); Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971); Cooper v. Allen, 467 F.2d 836 (5th Cir. 1972); La Raza Unida v. Volpe, 57 F.R.D. 94 (N.D.Cal.1972). Cf. Knight v. Auciello, 453 F.2d 852 (1st Cir. 1972); Callahan v. Wallace, 466 F.2d 59 (5th Cir. 1972); Lea v. Cone Mills Corp., 438 F.2d 86 (4th Cir. 1971); Miller v. Amusement Enterprises, Inc., 426 F.2d 534 (5th Cir. 1970); Hall v. Cole, 412 U.S. 5-6, n. 7, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); Northcross v. Board of Education, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973)