Sabine **D. JORDAN, Individually and on behalf of all other persons similarly situated, Appellees,**

v.

**Jack A. FUSARI, Commissioner of Labor and Administrator of Unemployment Compensation Act of the State of Connecticut, Appellant.**

**No. 582, Docket 73-2364.**

United States Court of Appeals, Second Circuit.

Argued Feb. 28, 1974.

Decided April 29, 1974.

Donald E. Wasik, Asst. Atty. Gen. (Robert K. Killian, Atty. Gen., Employment Security Div., Labor Dept., Hartford, Conn., on the brief), for appellant.

Jane M. Picker, Cleveland, Ohio (Charles E. Guerrier, Cleveland, Ohio; Eugene N. Sosnoff, Sosnoff, Cooper & Whitney, New Haven, Conn., on the brief), for appellees.

Irving Jaffe, Acting Asst. Atty. Gen.; Morton Hollander and Leonard Schaitman, Attys., U. S. Dept. of Justice; William J. Kilberg, Sol. of Labor; Alfred G. Albert, Laurie M. Streeter, H. A. Kelley, Attys., U. S. Dept. of Labor, amicus curiae.

Before KAUFMAN, Chief Judge, and FEINBERG and MULLIGAN, Circuit Judges.

FEINBERG, Circuit Judge:

This case involves the tail end of what might have been major litigation over the constitutionality of the State of Connecticut's policy of denying unemployment compensation to thousands of women in the months before and after childbirth. Commendably, the suit has been settled, and the only question on appeal is the propriety of an award of attorneys' fees to counsel for plaintiffs by order of the United States District Court for the District of Connecticut, Robert C. Zampano, J. The record on this basic issue is sparse, however, and the questions raised have been complicated by developments following entry of the challenged order. Accordingly, for reasons discussed in detail below, we remand to the district court for further consideration.

I

In March 1973, plaintiff Sabine D. Jordan brought this action in the district court under 42 U.S.C. § 1983, on behalf of herself and all others similarly situated. Naming various state officials as defendants, the complaint sought, among other things, an injunction against—and a judgment declaring the unconstitutionality of—section 31–236 (5) of the Connecticut General Statutes, which is reproduced in the margin.[1] In part, that statute provides:

1. (5) (A) If it is found by the administrator that a woman
    (a) has left her employment because of pregnancy, she shall be ineligible for bene-fits during the week in which she left and the remaining period of her pregnancy;
    (b) has been involuntarily separated from her employment because of pregnan-

No woman shall be eligible to receive benefits within two months before childbirth and, if such child is alive, such ineligibility shall continue for two months after childbirth.

The complaint alleged that withholding of unemployment compensation benefits from plaintiffs' class "solely on the basis of a condition of . . . sex is arbitrary and unreasonable and bears no rational relation to the purpose of compensating unemployed workers in the State of Connecticut" and thus denies plaintiffs' class due process and the equal protection of the law.

After the complaint was filed, the Connecticut legislature repealed the statute on May 4, 1973, effective October 1, 1973. This action, however, did not affect claims made prior to that date by women in plaintiffs' class. Meanwhile, in the period of March through June 1973, the parties held conferences, wisely encouraged by Judge Zampano, which resulted in a settlement of all issues in the case but one. Plaintiff agreed to withdraw a claim of discrimination she had filed with the Equal Employment Opportunity Commission and to drop as parties defendant all those originally named except Jack A. Fusari, Commissioner of Labor and Administrator of the state's unemployment compensation program. Defendant Fusari promised to pay plaintiff the benefits owed her. He further agreed to stop enforcing the statute quoted above [2] (which otherwise continued in effect until October 1, 1973); to notify women, denied benefits because of the statute, of their right now to claim them; and to review their applications fully and fairly, paying all sums found to be due in the absence of the statutory bar.

The matter left open by the settlement was the question of attorneys' fees.

cy, she shall be eligible to receive benefits, if otherwise eligible, until two months before childbirth, provided, if the separation was according to the provisions of a rule which, for the employment involved, is reasonable as defined by regulation by the administrator providing for the separation of pregnant women, she shall be ineligible for benefits during the week in which she was separated and the remaining period of her pregnancy.

(B) No woman shall be eligible to receive benefits within two months before childbirth and, if such child is alive, such ineligibility shall continue for two months after childbirth.

(C) No woman who left her employment because of pregnancy or who was involuntarily separated from her employment because of pregnancy shall be eligible to receive benefits after childbirth until she has applied, without restrictions, after the expiration of the two-month disqualification period, for reemployment in the same job or other suitable employment which may be offered to her by her most recent employer. If any such woman refuses to accept such reemployment, she shall continue to be ineligible until she has registered for work at the public employment bureau or other agency designated by the administrator, and has applied without restrictions for suitable employment, is available for work and is making reasonable efforts to obtain work. The administrator may require the production of doctors' certificates to establish the expected date of childbirth.

2. Although neither party has questioned Judge Zampano's power to enjoin the enforcement of C.G.S.A. § 31–236(5), in light of the requirement that an "injunction restraining the enforcement . . . of any State statute . . . upon the ground of the unconstitutionality of such statute" be entered only by a three-judge district court, 28 U.S.C. § 2281, we have considered the question, raising as it does the issue of subject matter jurisdiction, on our own motion. See Nieves v. Oswald, 477 F.2d 1109 (2d Cir. 1973), and authorities cited therein. We are of the view that where, as here, a settlement is reached prior to the district court's determination whether a three-judge court is required, the single judge retains jurisdiction to issue an order, predicated on that settlement, which enjoins the defendant state officer from enforcing the statute in issue. Quite simply, having mooted the underlying question of constitutionality, the settlement serves also to avoid the statutory three-judge court requirement operative only where the injunction against enforcement is the product of a constitutional adjudication. Finally, any other course would seem completely unwarranted. It would be an exercise in futility to require the district judge now to convene a three-judge court for the purpose of enjoining a statute that has been repealed for over six months.

Since most of the discussions were understandably informal, we have, even on this limited issue, not very much of a record. Apparently defendant was at one time willing to pay a lump sum award of $2,500, whereas plaintiff and her counsel believed that substantially more (25 per cent of benefits obtained) was warranted. But no one could be sure what the benefits would finally total since members of the class had to make, or renew, as yet undetermined claims. After hearing defendant's objections, the judge held ten per cent of benefits to be an appropriate fee. He ordered defendant to deduct this amount from claims awarded to members of plaintiffs' class and to forward the sums to plaintiffs' counsel monthly. The award rested on the theory that plaintiffs' lawyers had created—or would create—a fund benefiting a whole class, from which it was only just to compensate the attorneys. The court later noted:

> I am absolutely satisfied that the only reason the State is making payments today on these claims, and will until October . . . 1973, when the new law goes into effect, is because of this present lawsuit . . . .

In the following month, defendant asked the court to reconsider the order, claiming apparently for the first time that deduction of attorneys' fees from unemployment insurance benefits violated federal and state law. (Indeed, defendant opposed the allowance of any sum because of the non-profit status of plaintiffs' out-of-state counsel.) Judge Zampano held a hearing on these questions and adhered to his prior ruling that plaintiffs' lawyers were entitled to a ten per cent fee. He modified his prior order, however, to require that the funds be placed in escrow rather than disbursed to the attorneys, until this court had a chance to rule on the matter. The present appeal followed.

## II

In his brief and in oral argument in this court, appellant Fusari advances a number of reasons why the order of the district court, as modified, was improper. Some of appellant's contentions seem unimpressive; e. g., the position, renewed on appeal, that compensation was not warranted because one of the law firms representing plaintiffs' class is a non-profit organization, Women's Law Fund, Inc. But at least one argument gives us substantial pause. This is the claim that federal law[3] prevents any deduction for attorneys' fees from a claimant's unemployment insurance benefits. Accordingly, we asked for, and obtained, the definitive views of the United States Department of Labor on this issue, and they strongly support appellant's position. Briefly, the United States argues, Judge Zampano's order violates those federal statutes that provide that moneys in the unemployment fund of a state are to be used "solely in the payment of unemployment compensation." 26 U.S.C. § 3304(a)(4); 42 U.S. C. § 503(a). The Government also relies on long-standing administrative interpretation supporting its view in this matter. Appellees, on the other hand, not only challenge the conclusions of the United States on the authorized use of benefit funds; they also point to alternate sources of money to reimburse their counsel—such as, for example, the "employment security special administration fund" created by the State of Connecticut. C.G.S.A. § 31-259(d).[4] Although it is by no means clear which

3. For the proposition "that the district judge, as a federal chancellor, possesses an equitable discretion to award attorneys' fees" in a successful class suit "despite the provisions of State legal restraints," see Ojeda v. Hackney, 452 F.2d 947, 948 (5th Cir. 1972) (per curiam). See also Dodge v. Tulleys, 144 U.S. 451, 12 S.Ct. 728, 36 L.Ed. 501 (1892).

4. The Government concedes that "[a] special fund of this nature is not within the ambit of any Federal statutory requirement" and is therefore "wholly a matter of State law on which [it] expresses no view." Brief of the United States, jointly submitted by the Department of Labor and the Department of Justice (Joint Brief), at 38.

party is correct, it is evident that the issue is substantial and was presented to the district court only as an afterthought, without the considered imprimatur of agencies of the United States. This state of affairs is particularly unfortunate since the district court apparently had made an effort to obtain these views, but had met with no success.[5] Nevertheless—even in this posture of the case—we would ordinarily proceed to decide the issue, if we were persuaded that it was necessarily dispositive.

However, a number of circumstances suggest the desirability of another course. One is the argument made to us by appellees that the allowance of counsel fees can be justified on other grounds, which have never been presented to the district court. Thus, appellees point out that an award might be made on the "private attorney general" theory, citing Northcross v. Memphis Board of Educ., 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973) (per curiam), and Newman v. Piggie Park Enterprises, Inc., 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) (per curiam), or on the basis that defendant has shown bad faith or been obdurate or obstinate, citing Stolberg v. Members of Bd. of Trustees for State College of Connecticut, 474 F.2d 485 (2d Cir. 1973). Appellees ask us, should we reject the common fund doctrine relied on by the court below, to remand the case to the district court "for reconsideration and further findings"[6] on these or any other theories available to them in support of their claim for counsel fees. We note that such other theories do not ordinarily involve deductions from benefits and therefore avoid the thorny problems created by the order under attack.[7]

Another factor of concern to us is the bareness of the record, not only, of course, on the issues just mentioned, but also on the amount of the fee awarded. At the time the modified order was entered, there were apparently wildly different estimates of what the benefits to plaintiffs' class would total, since many claims still had to be filed. Accordingly, no one knew what the dollar amount of the ten per cent fee would be. By now, the picture should be clearer. Indeed, the United States suggests that even if some other theory might justify a counsel fee, the amount should in any event be recomputed since the aggregate sum allowed here will be too high and "out of line."[8] Rejecting the Government's reasoning, appellees nonetheless "eagerly adopt" the proposed solution of re-evaluating the size of the award because they deem the figure "grossly inadequate."[9]

We are thus left with the strong feeling that the best course is to remand the case for reconsideration by the district court. Judge Zampano will then have an opportunity to weigh the thoroughly briefed views of the United States, which he was unable to obtain sooner, and appellees' response thereto. The record can also be clarified on the question of what the ten per cent fee amounts to, now that determinations of claims have presumably all been made. The district court should further consider the alternative theories appellees now advance, which may well justify a judgment imposing reasonable attorneys'

5. At the second hearing, Judge Zampano stated:

I think the record should note I invited the Department [of Labor] to come in. I said I would listen to them, I would accept anything they had to say, and I welcomed their appearance. I understand the invitation was rejected.

6. Brief for Appellees at 31.

7. Cf. Brewer v. School Bd. of Norfolk, 456 F.2d 943, 951–952 (4th Cir.), cert. denied, 406 U.S. 933, 92 S.Ct. 1778, 32 L.Ed.2d 136 (1972) (imposition of fees on defendant in "quasi-application" of common fund doctrine).

8. Joint Brief at 45.

9. Appellees' Brief in response to Joint Brief, at 19–21.

fees on defendant, without deduction from the awards to plaintiffs' class.[10] In this connection, we note that the United States has called to our attention *Rothstein v. Wyman,* 467 F.2d 226 (2d Cir. 1972), cert. denied, 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973), and *Edelman v. Jordan,* 415 U.S. 651, 94 S. Ct. 1347, 39 L.Ed.2d 662 (1974), holding that the eleventh amendment barred retroactive payment of welfare benefits. We do not regard these cases as controlling here. Defendant, and of course the State Attorney General representing him, settled the claim for back unemployment insurance benefits in June 1973, nine months after the decision in *Rothstein.* The settlement is, therefore, a waiver of any eleventh amendment defense as to those benefits. It is true that defendant did not agree to pay attorneys' fees, and indeed has opposed them with every conceivable argument except the eleventh amendment. But in this context, we do not believe that the eleventh amendment, waived as to benefits, could bar the claim for fees alone. Moreover, it appears to us that the allowance awarded here, as part of an order granting injunctive relief, has at most the "ancillary effect on the state treasury," which *Edelman v. Jordan,* supra, 415 U.S. at 668, characterizes as "a permissible and often inevitable consequence of the principle announced in *Ex parte Young,*" 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).[11]

For the foregoing reasons, we remand this case to the district court for further proceedings consistent with this opinion.

10. In addition to *Northcross, Piggie Park Enterprises* and *Stolberg,* cited in text supra, cf. Wilderness Society v. Morton, 495 F.2d 1026 (D.C.Cir. 1974) (en banc); Brandenburger v. Thompson, 494 F.2d 885 (9th Cir. 1974); Knight v. Auciello, 453 F.2d 852 (1st Cir. 1972) (per curiam); Lee v. Southern Home Sites Corp., 444 F.2d 143 (5th Cir. 1971); La Raza Unida v. Volpe, 57 F. R.D. 94 (N.D.Cal.1972). See also note 7 supra.

11. See also Brandenburger v. Thompson, supra note 10, at 888; Gates v. Collier, 489 F. 2d 298 (5th Cir. 1973); Sims v. Amos, 340 F. Supp. 691, 694 n. 8 (M.D.Ala.) (3-judge court) (per curiam), aff'd, 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972). Cf. Fairmont Creamery Co. v. Minnesota, 275 U.S. 70, 48 S.Ct. 97, 72 L.Ed. 168 (1927); Utah v. United States, 304 F.2d 23 (10th Cir.), cert. denied, 371 U.S. 826, 83 S.Ct. 47, 9 L. Ed.2d 65 (1962).