Sabine D. JORDAN, Individually and on behalf of all other persons similarly situated

v.

Jack A. FUSARI, Commissioner of Labor and Administrator, Unemployment Compensation Act.

Civ. No. 15671.

United States District Court, D. Connecticut.

Aug. 26, 1975.

Louise G. Trubek, Eugene N. Sosnoff, James C. Whitney, Peter B. Cooper, Sosnoff, Cooper & Whitney, New Haven, Conn., for plaintiff.

Donald E. Wasik, Asst. Atty. Gen., Labor Dept. (AG–7), Hartford, Conn., for defendant.

ZAMPANO, District Judge.

### RULING ON MOTION FOR AN AWARD OF COUNSEL FEES

This civil rights class action was commenced on March 8, 1973, challenging the

constitutionality of Conn.Gen.Stat. § 31–236(5), which disqualified women from receiving unemployment compensation benefits in the two months before and after childbirth. After the complaint was filed, the Connecticut legislature repealed the statute, effective October 1, 1973, but enacted no provision for redress to women from whom benefits had been withheld by reason of the statute prior to that date.

Soon after the institution of the action, the Court held a series of conferences with counsel and ranking State officials. As a result, the parties settled all the issues in the case, except the question of an award of attorneys' fees to plaintiff's counsel; and incident thereto, a consent order was issued on June 26, 1973.[1]

With respect to legal fees, this Court, over the defendant's objection, ruled that ten per cent of the benefits paid to plaintiff's class represented an appropriate fee. The defendant was ordered to deduct this amount from each claimant's award, and to forward the sums to plaintiff's counsel on a monthly basis. Subsequently the defendant requested a reconsideration of the decision, claiming for the first time that the deductions violated federal and state law. When the Department of Labor declined the Court's invitation to offer guidance on the federal question posed by the defendant, the Court refused to vacate its ruling but did modify the order to require that the funds be placed in escrow, pending the defendant's appeal to the Court of Appeals for the Second Circuit.

On appeal, by request of the Second Circuit, the Department of Labor submitted "definitive views" on the issue of attorneys' fees which "strongly support appellant's position" that "moneys in the unemployment fund of a state are to be used 'solely in the payment of unemployment compensation.' 26 U.S.C. § 3304(a)(4); 42 U.S.C. § 503(a)." *Jordan v. Fusari*, 496 F.2d 646, 649 (2 Cir. 1974).

In light of the government's position on appeal, the Court of Appeals decided that the best course to follow would be to remand the case for reconsideration for the following reasons:

> Judge Zampano will then have an opportunity to weigh the thoroughly briefed views of the United States, which he was unable to obtain sooner, and appellees' response thereto. The record can also be clarified on the question of what the ten per cent fee amounts to, now that determinations of claims have presumably all been made. The district court should further consider the alternative theories appellees now advance, which may well justify a judgment imposing reasonable attorneys' fees on defendant, without deduction from the awards to plaintiffs' class. 496 F.2d at 650–51.

On remand, the Department of Labor's motion to intervene was granted; the parties submitted extensive briefs; and oral arguments were heard on the issue of attorneys' fees. Plaintiff's counsel now advance several alternative theories to sustain their request for an award in excess of $80,000; the defendant argues: 1) an award is not sustainable on any theory and is barred by the Eleventh Amendment;[2] 2) the claims for fees are inflated and excessive; and 3) if any fees are to be granted the claimants-beneficiaries as a class should pay the award; the intervenor contends that withholding of unemployment compensation benefits for attorneys' fees contravenes federal and state laws.

---

1. Under the order, the defendant, *inter alia*, agreed to pay plaintiff the benefits due her; to cease enforcing the statute (which would otherwise continue in effect until October 1, 1973); to notify women, who had been denied benefits because of the statute, of their right now to claim them; *and to grant full and fair hearings to all eligible women, paying all sums found to be due in the absence of the statutory bar.*

2. In view of the principles enunciated in *Class v. Norton*, 505 F.2d 123, 126 (2 Cir. 1974), and *Jordan v. Fusari*, supra at 651, the defendant's claim that an award of attorneys' fees is barred by the Eleventh Amendment is rejected.

## I

### (A) *The Common Fund Theory*

■ At the present time there is approximately $15,000 in escrow, representing ten per cent of the benefits awarded by the defendant to plaintiff's class to date, which is available to pay attorneys' fees. However, the government persuasively argues that it would be inconsistent with federal and state law if this Court directs any portion of unemployment compensation benefits to be paid to plaintiff's counsel. See, e. g., 26 U.S.C. § 3304(a); 42 U.S.C. § 503(a); Conn.Gen.Stat. § 31–272. Since neither the plaintiff nor the defendant has presented a sound argument to challenge the government's position, no useful purpose is served by reviewing the lengthy statutory and case citations submitted by the government. The Court is satisfied that unemployment benefits must be paid to the claimants promptly and in the full amount; therefore, any sums withheld for the payment of attorneys' fees would be contrary to law. Cf. *California Human Resources Development v. Java*, 402 U.S. 121, 131–33, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971). Accordingly, the Court will proceed to consider other theories to justify the payment of counsel fees in this case which do not involve deductions from benefits and would "avoid the thorny problems created by the order under attack," as recommended by the Court of Appeals. *Jordan v. Fusari*, supra at 650.

### (B) *Private Attorney General Theory*

Although plaintiff's counsel on remand strenuously advance the so-called "private attorney general" theory to justify an award of fees, see, e. g., *Kirkland v. New York State Dept. of Correctional Serv.*, 374 F.Supp. 1361, 1380–82 (S.D.N.Y.1974), that theory was laid to rest by the Supreme Court in the recent case *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975).

### (C) *Obdurate Conduct Theory*

■ The plaintiff's attorneys also contend that an award of fees may be made on the ground that the litigation and these proceedings were compelled by the defendant's "unreasonable, obdurate obstinacy," the test referred to in *Stolberg v. Members of Bd. of Tr. for State Col. of Conn.*, 474 F.2d 485, 489–91 (2 Cir. 1973). The Court disagrees. Costly and protracted litigation was avoided when this case was settled prior to trial; obviously, an agreement to dispose of the main issues by the issuance of a consent order was not possible without the cooperation and good faith efforts of the defendant. The defendant's resistance to the payment of counsel fees certainly cannot be characterized as the kind of "obdurate" conduct which would justify the imposition of attorneys' fees as a penalty. Under the circumstances of this case, the defendant's opposition to the plaintiff's motion for an award of counsel fees was reasonable.

### (D) *Common Benefit Theory*

■ While it is the general rule that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser," *Alyeska Pipeline Service Co. v. Wilderness Society*, supra, 421 U.S. at 247, 95 S.Ct. at 1616, a well-settled exception to the rule exists in special cases where the plaintiff's suit confers a benefit on a class of persons and the award of fees serves to spread the costs of litigation among the people within the benefitted class. *Id.* at 4567, 95 S.Ct. 1612; see also *Hall v. Cole*, 412 U.S. 1, 93 S.Ct. 1943, 36 L.Ed.2d 702 (1973); *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *Sprague v. Ticonic Bank*, 307 U.S. 161, 59 S.Ct. 777, 83 L.Ed. 1184 (1939).

■ As this Court has stated on prior occasions during the course of this lawsuit, the award of attorneys' fees would be an equitable and just application of judicial discretion. The plaintiff's action sought to secure the rights and guarantees of due process and equal protection to a large group of women in the State of Connecticut. By enjoining enforcement of the Connecticut statute, plaintiff compelled officials of the State to harmonize their actions

with the congressional policy that unemployment compensation benefits should not be denied or diminished by reason of sex. In addition, substantial benefits have been conferred upon numerous members of an ascertainable class, cf. *Mills v. Electric Auto-Lite Co.*, supra, 396 U.S. at 393–94, 90 S.Ct. 616, and a fund has been recovered in which others share. Cf. *Sprague v. Ticonic Bank*, supra, 307 U.S. at 166, 59 S.Ct. 777. See also *Lindy Brothers Builders, Inc. v. American Radiator and Standard Sanitary Corporation*, 487 F.2d 161, 164–166 (3 Cir. 1973).

Ordinarily, under these circumstances, the Court would deduct a fair award of attorneys' fees from the sums received by the benefited class. However, for the reasons stated previously, money to compensate plaintiff's counsel may not be derived from the pockets of the claimants-beneficiaries. But this is not dispositive of the issue. In certain unique situations, courts have applied a type of "common benefit" theory to support the award of counsel fees. For example, when pecuniary benefits have been conferred upon a class, but the payment of fees by that class is inappropriate, a defendant may be held liable for fees under a common benefit approach. See, e. g., *Brewer v. School Board of City of Norfolk*, 456 F.2d 943, 951–52 (4 Cir. 1972), cert. denied, 406 U.S. 933, 92 S.Ct. 1778, 32 L.Ed.2d 136 (1972); *Holodnak v. Avco Corp.*, 381 F.Supp. 191, 206 (D.Conn.1974), *rev'd in part on other grounds*, 514 F.2d 285 (2 Cir. 1975).

In *Brewer v. School Board of City of Norfolk*, supra, a desegregation case, the Fourth Circuit ordered a school district to provide free busing for students assigned to schools beyond walking distance from their homes. The court decided to award attorneys' fees upon "a quasi-application of the 'common fund' doctrine." 456 F.2d at 951. While the court recognized that the students received a pecuniary benefit in free bus transportation, it declared that to charge them a reasonable share of the attorneys' fees "would defeat the basic purpose of the relief." *Id.* at 952. The court concluded:

> The only feasible solution in this peculiar situation would seem to lie in requiring the school district itself to supplement its provision of free transportation with payment of an appropriate attorney's fee to plaintiffs' attorneys for securing the addition of such a provision to the plan of desegregation. There are thus "dominating reasons" under the "exceptional circumstances" of this case to award attorney's fees for the services of plaintiffs' attorneys in securing for these students this *pecuniary* benefit. *Id.*

*Holodnak v. Avco Corp.*, supra, was an action instituted by a discharged employee against his employer and union to challenge his dismissal as violative of free speech guarantees. In finding for the plaintiff, the court noted that "the rights vindicated here as a result of Holodnak's action will be of great benefit to all employees at the Avco plant." *Id.* at 206. Although the action thus produced a benefit to an ascertainable class, the court imposed liability for part of plaintiff's counsel fees upon defendant Avco, because an award against the beneficiaries would be counterproductive. The court explained:

> Benefits such as those achieved here "would be lost in most instances without the discretionary authority in courts to grant counsel fees," since individual employees generally lack the resources to take on the company or the union. The alleged wrong inflicted on the employee, the loss of employment in violation of contractual rights; the anticipated recovery, perhaps too insubstantial to sustain competent counsel's best efforts, and the ultimate purpose of making the employee whole, all suggest that the employee should retain his lost earnings for himself. (citation omitted) *Id.*

Thus, since the Court is of the opinion that there are dominating reasons under the exceptional circumstances of this case to award plaintiff's counsel reasonable compensation for their services, an award of attorneys' fees will be granted under the

"common benefit" theory or, as expressed by the court in *Brewer v. School Board of City of Norfolk,* supra, under a "quasi-application of the 'common fund' doctrine." *Id.* at 951.

## II

At best, it is a difficult function for the Court to determine the value of an attorney's services when the issue is contested. The task becomes even more troublesome and delicate when the arguments for and against an award generate such heated comments from counsel as "patently ridiculous," "unethical," "unconscionable," "champerty," "taking of money by false pretenses," "slight-of-hand accounting," "arithmetical fallacy," "contemptible," and so forth. (Defendant's Supplemental Brief, pp. 7, 10, 11, 16, 18; Plaintiff's Reply Brief, pp. 18, 19, 22, 28).

■ In an attempt to obtain sufficient information so that a fair and reasonable award may be made, the Court has conducted an evidentiary hearing and has had the benefit of comprehensive briefs and affidavits. See *Thomas v. Honeybrook Mines,* 428 F.2d 981, 988–89 (3 Cir. 1970), cert. denied, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971). Moreover, the Second Circuit and other leading case authorities have established certain guidelines which the Court must apply in evaluating a fee request. See, e. g., *City of Detroit v. Grinnell Corporation,* 495 F.2d 448, 468–474 (2 Cir. 1974); *Brandenburger v. Thompson,* 494 F.2d 885, 890 n. 7 (9 Cir. 1974); *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 717–19 (5 Cir. 1974); *Lindy Brothers Builders, Inc. v. American Radiator and Standard Sanitary Corporation,* 487 F.2d 161 (3 Cir. 1973); *Stanford Daily v. Zurcher,* 64 F.R.D. 680 (N.D.Cal.1974). Factors which should be considered include: 1) time and labor spent, 2) counsel's experience and reputation, 3) magnitude and complexity of the litigation, 4) the amount recovered, 5) the attorneys' "risk of litigation," and 6) what a reasonable fee would be under all the circumstances.

The first set of plaintiff's attorneys requesting legal fees consists of the various members of the firm of Sosnoff, Cooper & Whitney, and one of its former associates. Attorneys Eugene N. Sosnoff and James C. Whitney, both experienced federal court trial practitioners, claim a total of 800 hours of time spent on the case; Attorney Peter Cooper requests compensation for 42 hours; Attorney Louise G. Trubek, who is no longer with the firm, submits a total of 88 hours for services rendered; and Ms. Ellen Goldsmith, a law student employed by the firm to handle liaison with the claimants, worked a total of 783 hours.

Another series of bills have been filed on behalf of Attorneys Jane Picker, Barbara Besser and Charles Guerrier, who are associated with Women's Law Fund, Inc., an Ohio nonprofit organization actively engaged in civil rights and sex discrimination litigation. They claim approximately 440 hours devoted to this lawsuit as "co-counsel" for the plaintiff.

The defendant has systematically examined each hour of time submitted by the plaintiff's counsel for payment. Primarily he contends that 300 hours of the time claimed by Attorneys Sosnoff and Whitney should be disallowed because other attorneys performed similar or identical services for which a fee award is sought, and because many of the hours were devoted to research and preparation concerning the motion presently before the Court. The defendant also objects to an allowance of fees for Ms. Goldsmith on the ground that her services constituted the unauthorized practice of law for which no compensation should be granted. Finally, the defendant argues that the Women's Law Fund is entitled to almost no attorneys' fees for the reasons that it is not a professional legal firm and that, in any event, its attorneys merely duplicated the time and effort of the other attorneys in the case.

■ At the outset, the Court rejects the defendant's contention that counsel connected with the Women's Law Fund are not eligible to claim fees for their services. Attorneys associated with legal service organi-

zations may recover reasonable fees in a case wherein the court determines that equity requires fair compensation for counsel who vindicate the constitutional rights of the poor. Cf. *NAACP v. Button,* 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Thompson v. Madison County Board of Education,* 496 F.2d 682, 685 (5 Cir. 1974); *Jordan v. Fusari,* supra, 496 F.2d at 649; *United States v. Texas,* 495 F.2d 1250 (5 Cir. 1974); *Brandenburger v. Thompson,* 494 F.2d 885 (9 Cir. 1974); *Lee v. Southern Home Sites Corp.,* 444 F.2d 143 (5 Cir. 1971); *Palmer v. Columbia Gas of Ohio, Inc.,* 375 F.Supp. 634 (N.D.Ohio 1974). Nor is the Court persuaded that the Sosnoff firm cannot seek reimbursement for its expenses in retaining Ms. Goldsmith to handle the multitude of administrative and clerical duties connected with the processing of claims.

■ There is some merit, however, to the defendant's argument that there has been a duplication of time and effort in several respects by the plaintiff's attorneys in the preparation and presentation of this case. For example, although this civil rights complaint was prepared by the Women's Law Fund, Inc., which has a particular expertise in such matters, local counsel logged 41 hours for research, review and redrafts of the complaint before it was filed on March 8, 1973. At times, two or more plaintiff's attorneys appeared before this Court when one could have adequately represented the plaintiff's interests. The preparation of the appellate briefs took 90 hours of Attorney Guerrier's time, 47 hours of Attorney Picker's time, and five hours of Attorney Besser's time. Three attorneys appeared before the Court of Appeals for oral argument on February 28, 1974, for which Attorney Picker claims 28 hours, Attorney Guerrier 22 hours, and Attorney Sosnoff 12 hours. This is not to imply that counsel have attempted to "puff" their bills; overlapping of services is inevitable when one party has seven attorneys. But the defendant should not be required to pay each one of them for the same or similar services. Under these circumstances, an adjustment of hours is appropriate.

The Court must also recognize that the core issues in the litigation were resolved without intensive and complex litigation. Almost from the outset, the defendant conceded the validity of the plaintiff's constitutional claims and a consent order was approved by the Court on June 26, 1973. Thus the Court must carefully scrutinize the time sheets to distinguish between legal services, in the strict sense, and administrative, procedural and clerical work performed by counsel to implement that order. Moreover, the amount recovered to date falls far short of the fund anticipated when the suit was commenced. If the Court's recollection is correct, counsel estimated a recovery in excess of $600,000. At the present time, approximately $150,000 in claims has been paid by the defendant. Finally, the factor of "risk of litigation," see *City of Detroit v. Grinnell Corporation,* supra at 471, must weigh in the balance and, as stated, there was little doubt that the plaintiff's cause would be successfully advanced by her counsel.

■ With respect to the hourly rate for work performed, the Court deems it proper to distinguish between court appearances and "office, library and telephone" services.

Accordingly, with respect to each claim for payment, the Court has examined thoroughly the time sheets submitted, has reviewed all of the defendant's general and specific objections thereto, has applied the relevant factors governing the award of attorneys' fees, and is of the considered opinion that compensation should be allowed as follows:

1) *Attorney Eugene N. Sosnoff*

Attorney Eugene N. Sosnoff requests payment for 487 hours spent on this case. The Court grants compensation for court appearances of 25 hours at $50 per hour; attendance time at the oral argument before the Second Circuit on February 27 and 28, 1974, is excluded as unnecessary. With due adjustments for duplication of effort and "risk of litigation" factors, payment for 300 hours of research and related services is

awarded at $35 an hour, and 57 hours at $25 per hour is allowed for administrative and similar services. Thus Attorney Sosnoff is to receive a reasonable attorney's fee of $13,175.

### 2) Attorney James C. Whitney

Attorney Whitney's time sheets indicate a total of 309 hours. The Court will grant no fees for court appearances at which other counsel adequately represented the plaintiff's interests. With the further application of the duplication of time factor and the litigation risk factor, a reasonable attorney's fee is $6100 for 54 hours at $50 per hour and 136 hours at $25 per hour.

### 3) Attorney Peter B. Cooper

Attorney Cooper has logged 43 hours; under all the circumstances, the Court awards compensation for six hours at $35 per hour and 22 hours at $25 per hour. A total of $760 shall be paid to Attorney Cooper.

### 4) Attorney Louise E. Trubek

Attorney Trubek requests payment for 88 hours of legal services. Research work is adjusted to 30 hours at a rate of $25; the conference with Attorney Wasik on May 9, 1973 shall be compensated for at $35 per hour; all requests for fees for court appearances as well as the August 2 and August 3, 1973 trip to New Haven are denied. An attorney's fee of $960 shall be paid to Attorney Trubek.

### 5) Ms. Ellen E. Goldsmith

The firm of Sosnoff, Cooper and Whitney seeks reimbursement for Ms. Goldsmith's paraprofessional services of 783 hours at the rate of $10 an hour which would compensate the firm for actual salary costs plus "overhead expenses including office space, secretarial help and related expenses." The Court agrees that Ms. Goldsmith's employment was necessary, as plaintiff's counsel contend, but disagrees that her services should be compensated for

at a rate of $10 per hour. A fee of $3 an hour seems reasonable; therefore, the firm of Sosnoff, Cooper and Whitney shall receive the sum of $2349.

### 6) Attorney Jane M. Picker

Attorney Picker's time chart reveals 177 hours attributed to this case, for which she seeks payment at $75 per hour. With relevant guidelines being applied, the Court is of the opinion that 1) oral argument before the Second Circuit (four hours) should be compensated for at a rate of $100 per hour; 2) two appearances (four hours) before this Court for the purpose of settlement conferences were necessary i. e., April 3 and April 10, 1973, and a fee of $50 per hour is awarded; 3) an adjustment of 116 hours should be made for duplication of effort and risk of litigation factors; and 4) of the remaining 53 hours, 41 should be paid for at a rate of $35 and 12 at a rate of $25. Accordingly, Attorney Picker shall receive $2335.

### 7) Attorney Charles E. Guerrier

Large blocks of the 258 hours logged by Attorney Guerrier are attributed to court appearances, research, and travel which the Court concludes were unnecessary or merely duplications of time and effort expended by Attorneys Sosnoff and Picker on this case. A reasonable fee for his services is $750.

### 8) Attorney Barbara Kaye Besser

Since the moving papers fail to demonstrate that Attorney Besser's time and services were necessary to advance the plaintiff's cause, her claim for legal fees is rejected.

### 9) Expenses

Reimbursement for the cost of the telephone installed pursuant to the Court's order is granted; the remaining claims for travel and other expenses are denied.

In summary, attorneys' fees and other payments are ordered as follows: [3]

---

**3.** It is appropriate to note that the Court expresses no opinion as to the source from which

the fees should be paid. Apparently, in addition to the Unemployment Compensation Fund,

| Attorney Eugene N. Sosnoff | – | $13,175.00 |
|---|---|---|
| Attorney James C. Whitney | – | 6,100.00 |
| Attorney Peter B. Cooper | – | 760.00 |
| Attorney Louise E. Trubek | – | 960.00 |
| Ms. Ellen E. Goldsmith | – | 2,349.00 |
| Attorney Jane M. Picker | – | 2,335.00 |
| Attorney Charles E. Guerrier | – | 750.00 |
| Expenses | – | 678.09 |
| Total: | | $27,107.09 |

So Ordered.

other separate and distinct sources of money for attorneys' fees are the Employment Security Fund, Conn.Gen.Stats. 31–259(a), (b) and (c), and the Employment Security Special Administration Fund, Conn.Gen.Stat. 31–259(d).