DENNIS J. FLYNN, Corporation Counsel, Racine County
It appears from information you have provided that the sheriff and the administrator of the Racine County jail take the position that they will not allow nonattorney investigators for the Racine Public Defender's office to interview prisoners confined within the Racine County jail. This policy apparently has developed because of the alleged lack of physical space to permit such interviews, because some of the nonattorney investigators for the Public Defender's office have a past criminal activity record, the fear that these people might pass contraband items to a prisoner while conducting interviews, and the lack of a physical outlay of the jail complex so as to physically separate the prisoner from the paralegal personnel conducting the interviews.
You request my opinion as to whether nonattorney legal personnel fall within the Sixth Amendment's right to counsel when they are performing legal services on behalf of an attorney. Other related questions include whether a paralegal person should have a specified amount of formal training and whether the sheriff can deny access rights to prisoners by a paralegal assistant who has a *Page 153 
criminal record or for any other reason such as overcrowding or lack of adequate facilities.
There is no question that under Wisconsin law the sheriff has charge of the jail, is responsible for discipline, maintenance, and security of the jail premises and the inmates placed in his custody. See sec. 59.23 (1) and (2) and, generally, ch. 53, Stats.
The statutes are silent regarding the right of a prisoner to see a paralegal person, but sec. 946.75 makes it a crime for any person while holding another in custody to deny that person his right to consult and be advised by an attorney "if that person requests a named attorney." Article I, sec. 7, of the Wisconsin Constitution and the Sixth Amendment to the United States Constitution have been construed to require that a prisoner have the assistance of counsel in all criminal prosecutions. State exrel. Traister v. Mahoney (1928), 196 Wis. 113, 219 N.W. 380;Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602,16 L.Ed.2d 694.
Although sec. 905.03, Stats., provides for privileged communications between a client and a "representative of the lawyer" as well as between the client and the lawyer himself, no Wisconsin cases are directly in point on the question of whether the prisoner is entitled to have a paralegal person consult with him under the provisions of the state or federal constitutions. However, several federal courts have considered the question and the United States Supreme Court has given some guidance inProcunier v. Martinez (1974), 416 U.S. 396, 94 S.Ct. 1800,40 L.Ed.2d 224. In that case, Procunier, in his capacity as director of the California Department of Corrections, adopted a regulation which banned the use of law students and legal paraprofessionals to conduct attorney-client interviews with inmates in the state correctional institutions. The regulation read as follows:
 "Investigators for an attorney-of-record will be confined to not more than two. Such investigators must be licensed by the State or must be members of the State Bar. Designation must be made in writing by the Attorney."
The three-judge district court had concluded that the regulation would impose an absolute ban on the use by attorneys of law students and legal paraprofessionals to interview inmate clients or to even delegate to such persons the task of obtaining prisoners' *Page 154 
signatures on legal documents. The district court held that the rule constituted an unjustifiable restriction on the right of access to the courts, in violation of the prisoners' due process rights. The supreme court affirmed, pointing out that the constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights. The court also adopted the reasoning of the lower court that the ban against the use of law students or other paraprofessionals for attorney-client interviews would deter some lawyers from representing prisoners who could not afford to pay for their traveling time or that of licensed private investigators, and those lawyers who agreed to do so would waste time that might be better used in working on the inmates' legal problems. The court said:
 ". . . Regulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid. Ex parte Hull, 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034 (1941).
"***
 ". . . Allowing law students and paraprofessionals to interview inmates might well reduce the cost of legal representation for prisoners. The District Court therefore concluded that the regulation imposed a substantial burden on the right of access to the courts." 94 S.Ct. 1814.
The door was left open, however, to some reasonable regulation and control of the use of law students and paraprofessional personnel to interview prisoners. The court suggests that prison administrators might well legitimately control access of paraprofessionals who posed some colorable threat to security or access to those inmates thought to be especially dangerous.
Although the inmate may have a due process right to see an attorney or the attorney's agent, such right is subject to reasonable prison regulations relating to prison security, discipline, and the general operation of the institution. However, if the government has reasonable and adequate alternatives available to a given end, it must choose the measures which least interfere with individual constitutional rights. *Page 155 
The Martinez case was decided on April 29, 1974, and on June 26, 1974, the United States Court of Appeals for the First Circuit decided Souza v. Travisono (1st Cir. 1974), 498 F.2d 1120. This case involved an unwritten policy of the Rhode Island adult correctional institutions which had the effect of denying inmates access to law students serving as agents of lawyers. Although pointing out that inmate access to law students is not always a matter of constitutional right, the court affirmed that part of the district court order relating to access to the adult correctional institution by attorneys "or their paralegal assistants, including law students."
The district court, as did the supreme court in Martinez, held that the summary barring of paralegal personnel who were rendering general legal services to inmates under the direction of an attorney does in effect impair the prisoner's right to access to the courts. Souza v. Travisono (D. R.I. 1973),368 F. Supp. 959. In both instances the courts indicated that the right of access to the courts must mean access to competent legal assistance, reasonably available and capable of responding to the legal needs of the inmate population. The court said inTravisono, at page 967:
 "A penumbra incident thereto which is necessary to effectuate its meaning must include the right of a prisoner to consult with his attorney's agent."
In addition to the due process rights, of course, theSixth Amendment right to counsel is also to be considered. Where such right is involved, not only must an attorney be given the broadest possible opportunity to meet and confer with inmate clients, but the same right, as of necessity, filters down to the attorney's paralegal assistants, which would include investigators, accountants, and other experts in appropriate cases.
Your second question is what amount, if any, of formal training or certification must these assistants present to the sheriff before they are allowed access to the jail.
In Travisono, the district court said, at 368 F. Supp. 970:
 ". . . And the right to select such assistant rests with the attorney and not the prison officials. If this were not so it could seriously impair the inmate's Sixth Amendment right. . . ." *Page 156 
It would appear, therefore, that the sheriff may not set up standards as to formal training or education for paralegal assistants. What the sheriff can do, of course, is to require that the attorney for whom the paralegal assistant works certify to the sheriff that such person is, in fact, the agent and representative of the attorney and that the attorney has a "legitimate interest" in having the prisoner interviewed. The courts have recognized that a legitimate interest may be created by a request by the prisoner, by a family member, a friend, or even by an anonymous person to an attorney that the attorney see an inmate because such prisoner has so requested or needs help.
Your third question asks whether it is within the discretion of the sheriff to deny access to the jail to a nonattorney legal assistant because of that person's past record or for any other reason, such as overcrowding or lack of adequate facilities.
In Martinez, supra, the United States Supreme Court pointed out that, with respect to access, reasonable administrative regulations or policies clearly relating to the screening and monitoring of paralegal assistants visiting the institution, the discipline and control of inmates, and the maintenance of order and safety in the jail or prison would appear to be permissible. Thus, if it can be shown that a particular paralegal person has caused or is likely to cause problems in the area of security, discipline, and control of inmates, the sheriff could probably control or deny such person's access to a prisoner under the compelling and overwhelming state interest test set out inGilmore v. Lynch (N.D. Cal. 1970), 319 F. Supp. 105. However, the sheriff would not have the authority to deny access to the jail solely because of such person's past criminal record. The mere fact of criminal record, in my opinion, would not satisfy the compelling interest test. Any impairment of the inmate's Sixth
and Fourteenth Amendment rights must be weighed against the state interest. It is my opinion that the courts, in applying such balancing test, would find that the state has failed to establish a compelling and overwhelming state interest in restricting the inmate's Sixth and Fourteenth Amendment rights if the grounds were solely that the paralegal person has a past criminal record.
As to denial of paralegal access because of overcrowding or lack of adequate facilities, again, the balancing test certainly would *Page 157 
result in a court finding that the state has unjustly denied the prisoner Sixth and Fourteenth Amendment rights. If facilities do not exist for adequate consultations between inmates and lawyers or paralegal personnel, the courts have the power to order, and have in other cases ordered, that facilities be prepared so that the constitutional rights of the prisoners can be accommodated. Thus, in the Travisono case, the court directed that the director of the Rhode Island Department of Corrections submit a plan to the court for modifying existing rooms to facilitate private conferences between inmates and their attorneys or the attorneys' agents.
Therefore, although visits can be reasonably controlled and limited because of overcrowding or lack of adequate facilities, any policy designed to prevent paralegal personnel from ever visiting inmates because of overcrowding or lack of adequate facilities would in all likelihood be found unconstitutional by a court.
BCL:LLD