Anthony SOUZA et al.,
Plaintiffs-Appellees,

v.

Anthony P. TRAVISONO et al.,
Defendants-Appellants.

No. 74–1243.

United States Court of Appeals,
First Circuit.

Argued Dec. 2, 1974.

Decided March 11, 1975.

W. Slater Allen, Jr., Asst. Atty. Gen., with whom Richard J. Israel, Atty. Gen., was on brief, for defendants-appellants.

Ralph J. Gonnella, Providence, R. I., with whom Hodosh, Spinella, Hodosh & Angelone, Providence, R. I., was on brief, for plaintiffs-appellees.

Before COFFIN, Chief Judge, McEN-TEE and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

In Souza v. Travisono, 368 F.Supp. 959 (D.R.I.1973), the district court held that in refusing to let law students render legal aid to inmates at the Rhode Island Adult Correctional Institutions (ACI), the warden deprived inmates of a constitutional right of meaningful access to the courts and also of a more general right to legal assistance with personal matters. Thereafter, the Supreme Court in Procunier v. Martinez, 416 U.S. 396, 419, 94 S.Ct. 1800, 1814, 40 L.Ed.2d 224 (1974), held that prisoners have a due process right of access to courts, including reasonable access to law student agents of attorneys, "to challenge unlawful convictions and to seek redress for violations of their constitutional rights." We then affirmed the district court deci-

sion in *Souza* to the extent it was governed by *Procunier,* but left unanswered whether inmate access to law students must be granted for more mundane problems.[1]  498 F.2d 1120 (1st Cir. 1974). On petition for recovery of costs and attorneys' fees, the district court granted fixed costs of $464.85 to plaintiff inmates and attorneys' fees of $11,340.00, $2,040.00, and $1,776.00 to plaintiffs' three private counsel. Defendant state officials appeal from that part of the order allowing fees.

This case raises the difficult question of whether attorneys' fees awards against a state are barred by the eleventh amendment. There is also a serious question, should the award be constitutional, whether it is excessive. But first we turn briefly to appellants' general challenge to the court's authority to make any award of attorneys' fees in a case like this one. We hold that line of attack to be clearly foreclosed by recent decisions of this circuit. Hoitt v. Vitek, 495 F.2d 219 (1st Cir. 1974); *see* Knight v. Auceillo, 453 F.2d 852 (1st Cir. 1972); Natural Resources Defense Council, Inc. v. EPA, 484 F.2d 1331, 1333 (1st Cir. 1973).

As a predicate to its award the district court found that the litigation benefited the plaintiff class and that it furthered the significant public policy reflected in 42 U.S.C. § 1983. The court expressed the view that the protection of inmates' constitutional rights depended on the efforts of skilled attorneys who "should be encouraged to undertake such difficult and time consuming litigation." We upheld this "public benefit—private attorney general" rationale in *Hoitt.*

We can see no factual basis for distinguishing this case from *Hoitt.* It is immaterial whether appellants were, as they assert, in sincere doubt as to constitutional requirements prior to *Procunier.* The theory behind awarding attorneys' fees in this instance was not to punish

---

1. This court considered the record inadequate for deciding this further question and noted that controversy might not exist because, among other things, there was no showing

that a new group assuming the inmate legal assistance function needed or used law student assistants.  498 F.2d at 1124.

appellants for bad faith but to recompense those who by helping protect basic rights were thought to have served the public interest.

■■ Nor do we see merit in the argument that the attorneys' services were valueless because the Supreme Court's decision in *Procunier* would have resolved matters in any event. The need for the attorneys' services is not to be judged in hindsight but as it reasonably appeared at the time. *Procunier* vindicated, in important ways, the merits of the inmates' original position, and their attorneys earlier prevailed in the district court. Having forced the inmates to sue in order to establish their rights, it does not lie in appellants' mouths to disparage their having done so.

Thus, apart from the question of the eleventh amendment, which we did not consider in *Hoitt*, we find no error in the district court's discretionary ruling to grant attorneys' fees in this case.

■ We turn next to whether taxation of attorneys' fees against defendant state officials is an award of money against an unconsenting state in violation of the eleventh amendment. The instant litigation was brought by Rhode Island inmates against Rhode Island officials. Notwithstanding its language,[2] the eleventh amendment has been held also to embody a notion of sovereign immunity restricting federal judicial power over litigation against a state by its own citizens as well as by citizens of other states. *E.g.,* Edelman v. Jordan, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); Employees of the Dep't v. Department of Pub. Health & Welfare, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973); Duhne v. New Jersey, 251 U.S. 311, 40 S.Ct. 154, 64 L.Ed. 280 (1920); Hans v. Louisiana, 134 U.S. 1, 10–15, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

It was held in *Edelman* that a citizen may not recover "an accrued monetary" liability from a state. 415 U.S. 664, 94 S.Ct. 1347. A remedy in the form of a recovery of money was distinguished from an injunction or declaratory judgment. These latter "prospective" remedies are not barred by the eleventh amendment even though they may have the "ancillary effect" of a drain upon the state treasury. 415 U.S. at 666 n. 11, 668, 94 S.Ct. 1347; *see* Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); Ex parte New York, 256 U.S. 490, 500, 41 S.Ct. 588, 65 L.Ed. 1057 (1921); Ex parte Young, 209 U.S. 123, 159–60, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

Viewed in isolation, an award of attorneys' fees in the present case might seem akin to a money judgment against Rhode Island. Since defendant officials were sued for acts done apparently in good faith and within their official authority, they will doubtless be reimbursed by the state for the award. *Cf. Edelman, supra* at 644–68, 94 S.Ct. 1347. Thus arguably the fees are an unconstitutional exaction upon Rhode Island. On the other hand, the fees are incidental to the main litigation, which, being for injunctive and declaratory relief, was permissible under the eleventh amendment. An award of attorneys' fees is perhaps so "ancillary" as to be constitutional, even though there will be some drain on the state treasury. Which view is correct is presently unclear. *Compare, e. g.,* Skehan v. Board of Trustees, 501 F.2d 31 (3d Cir. 1974), *and* Jordan v. Gilligan, 500 F.2d 701 (6th Cir. 1974), *with* Class v. Norton, 505 F.2d 123 (2d Cir. 1974), Gates v. Collier, 489 F.2d 298 (5th Cir. 1973), petition for rehearing en banc granted, 500 F.2d 1382 (5th Cir. 1974), *and* Sims v. Amos, 340 F.Supp. 691 (M.D.Ala.1972), aff'd mem., 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1973).

The Rubicon was seemingly crossed in this circuit in Boston Chapter NAACP, Inc. v. Beecher, 504 F.2d 1017 (1st Cir. 1974), where we approved the assessment

---

**2.** The eleventh amendment provides:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

of the costs of an appeal in a civil rights action against Massachusetts officials. We relied upon *Fairmont Creamery Co. v. Minnesota,* 275 U.S. 70, 48 S.Ct. 97, 72 L.Ed. 168 (1928), in which the Supreme Court declared that sovereign immunity did not protect a state against judgment for costs in litigation before the Supreme Court. The Court viewed the costs as incident to its regular jurisdiction, the awarding of costs being "the invariable practice". *Id.* at 77, 48 S.Ct. 97.

■ If, as we held in *Boston Chapter NAACP,* the eleventh amendment allows costs to be assessed against state officials, it is hard to see why it should bar attorneys' fees. Both are in similar relationship to the main litigation and both should stand or fall together. It is true . that there is less sanction in our law for attorneys' fees; and the awarding of fees in these precise circumstances and upon the rationale we approved in *Hoitt* has yet to be considered by the Supreme Court. Conceivably costs, being more traditional than attorneys' fees, are allowable, but attorneys' fees are not. Conceivably attorneys' fees based on certain rationales are allowable but others are not. Nonetheless whatever the situations ultimately deemed suitable for the award of the attorneys' fees, such fees, to the extent allowable, seem to us generically to be the same as court costs. They are a part of the litigation expense deemed, for whatever reason, recoverable by the successful party or attorney. Any effort to distinguish for eleventh amendment purposes on the basis of theories of award would invite endless confusion. And to the extent states and state officials are, under our federal system, amenable to suit in federal courts, they should be responsible for costs and fees incidental to litigation to the same degree as others. To that extent, as the Supreme Court said in *Fairmont,* a state may lose "some of its sovereign character". 275 U.S. at 77, 48 S.Ct. 97. Accordingly, for reasons set forth in *Boston Chapter NAACP,* we hold that attorneys' fees, like costs, are not barred by the eleventh amendment.

Appellants argue that the amount of attorneys' fees awarded was excessive. Without belittling the value of the services, we agree. The district court awarded fees at the rate of $60 per hour, based on affidavits of two prominent local attorneys citing returns of $60 and $70 per hour as reasonable. Noting that the specific amount to be awarded was within the court's discretion, the court listed as relevant factors "the circumstances surrounding the case, its importance and complexity, and the skill, experience and professional standards of the attorney." The court found plaintiffs' attorneys to be "skilled, well prepared and obviously experienced in prison litigation"; their work was of "high caliber" and of "unquestioned assistance" to the court. Appellants have not contested the hours spent by plaintiffs' counsel, but argue that a skilled and experienced counsel able to charge $60 per hour in the marketplace would not have required so many hours to prepare and conduct this case.

■ We disagree with the assumption of the district court and both parties that the hourly rate is to be based on the reasonable marketplace rate for such services. This is not a case in which the attorneys sold their services to a private client willing to pay the market price for them. *Cf.* Natural Resources Defense Council, Inc. v. EPA, *supra,* 484 F.2d at 1338–39.[3] Those who will ultimately pay

---

**3.** We said in that case, in reference to the issue of attorneys' fees to be imposed upon an agency of the federal government,

"We will scrutinize carefully the requested costs and fees. Petitioners are not a public agency and are legally responsible to no one but themselves; we must satisfy ourselves that the taxpayers' money will not be used to support needless or exces-

sive legal items. We must also recognize that petitioners, as surrogate attorneys for the interest of the public and the EPA, have volunteered and 'imposed' their services on 'clients' that never contracted for them. As attorneys for involuntary clients, their fees may properly be less than those they could have received by entering the marketplace and selling their services to the pri-

the fees, the Rhode Island taxpayers—on a theory, in part, of public benefit—have had no opportunity to pass on either the extent of the services or on the fees.

Judge Theis of the District of Kansas, dealing also with an award of fees in civil rights litigation, put the matter in what we hold to be proper perspective:

"In determining the amount of an award of reasonable attorneys' fees, the Court is mindful that the award is designed to effectuate public policy, encourage private litigation, and spread litigation expenses equitably among those benefiting from the institution of the action—not to punish the wrongdoer or to reward the successful plaintiffs or their attorneys. A member of the legal profession has the obligation to represent clients who are unable to pay for counsel and also to bring suits in the public interest. While embarking upon their duties, they should not be motivated by a desire for profit but by public spirit and sense of duty."

Gilpin v. Kansas State High School Activities Ass'n, Inc., 377 F.Supp. 1233, 1253 (D.Kan.1974).

Here we have the further aspect that the litigation was only partially successful. While, as we have noted, the attorneys are not to be denied reasonable fees merely because *Procunier* settled favorably one of the main questions, it is appropriate, in establishing a reasonable fee, to take into account the net result of their efforts.

We conclude, as did Judge Theis and as did Chief Judge Johnson in Wyatt v. Stickney,[4] that the Criminal Justice Act is a reasonable point of reference in establishing a fee. We recognize that inflation tends to render the fee schedule under the Act less adequate than formerly; on the other hand, it has yet to be modified legislatively, and it provides a benchmark. The alternative—leaving the matter to the total discretion of each

judge—invites a wide disparity of fees and, we would suspect, the sort of public cynicism which can only undermine the ideals which the main litigation sought to promote. We add, however, that while the Criminal Justice Act rate of $30 per in-court hour and $20 per out-of-court hour should be the usual guideline in cases of this nature, we might sanction departures therefrom in cases of truly exceptional public importance. Moreover, should inflation continue to take its toll, we will keep an open mind to some general upward revision in the generality of cases.

We accordingly reverse the order of the district court as to the amount of attorneys' fees,[5] and remand for redetermination of the fees on the basis of a rate of $30 per in-court hour and $20 per out-of-court hour.

So ordered.

vate client who would make the highest bid for them."

**4.** 344 F.Supp. 387 (N.D.Ala.1972).

**5.** We do not disturb the grant of $464.85 for fixed costs.