**LA RAZA UNIDA OF SOUTHERN ALAMEDA COUNTY et al.,
Plaintiffs,**

v.

**John A. VOLPE, etc., et al., Defendants.**

**No. C–71–1166 RFP.**

United States District Court,
N. D. California.

Sept. 29, 1977.

B. E. Bergesen, III, Armando M. Meno-cal, III, Public Advocates, Inc., San Francis-co, Cal., Stephen E. Ronfeldt, Clifford Sweet, Legal Aid Society of Alameda, Oak-land, Cal., for plaintiffs La Raza Unida, et al.

John P. Horgan, Norval C. Fairman, Rob-ert R. Buell, San Francisco, Cal., for Volpe, etc., et al.

## MEMORANDUM AND ORDER

PECKHAM, Chief Judge.

Plaintiffs bring this motion pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C.A. § 1988 (West Supp. 1977) (hereinafter "Attorney's Fee Act"), to recover attorney's fees incurred in obtaining a preliminary injunction against further implementation of California Highway Project 238. *La Raza Unida v. Volpe*, 337 F.Supp. 221 (N.D.Cal.1971), *aff'd* 488 F.2d 559 (9th Cir. 1973), *cert. denied*, 417 U.S. 968, 94 S.Ct. 3171, 41 L.Ed.2d 1138 (1974).

A brief history of this litigation will help place the issues raised by the instant motion into context.

Plaintiffs initiated this action on June 16, 1971, seeking to halt land acquisition and other preparations for California Highway Project 238, a proposed highway of 14 miles planned to pass through Hayward, Union City and Fremont, California. The complaint alleged that defendants had failed to adhere to certain federally imposed requirements regarding the construction of "federal-aid" highways, including the provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, sections 205 and 210, 42 U.S.C. §§ 4625, 4630 (1970) (hereinafter Relocation Assistance Act), section 4(f) of the Department of Transportation Act of 1966, 49 U.S.C. § 1653(f) (1970) and the Federal Aid Highway Act of 1968, section 24, 23 U.S.C. § 128 (1970). In addition, plaintiffs alleged that defendants' conduct had deprived them of due process and equal protection guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.[1]

Concluding that Project 238 was a federal-aid highway within the meaning of appli-cable federal statutes, this court held that the state defendant had failed to implement a relocation assistance program complying with sections 205 and 210 of the Relocation Assistance Act.[2] Accordingly, the court issued a preliminary injunction restraining further implementation of Project 238 until the mandate of federal law had been observed. Since affirmance of that injunction by the Court of Appeals for the Ninth Circuit, plans for the construction of the project appear to have laid largely dormant.

Subsequent to issuing its injunction, this court awarded attorney's and expert witness fees to plaintiffs on the ground that they had acted as "private attorneys general" to effectuate strong congressional policies that benefitted a large class of persons. *La Raza Unida v. Volpe*, 57 F.R.D. 94 (N.D. Cal.1972). Defendant's[3] appeal from the fee award was eventually dismissed as taken from a nonappealable order. This court subsequently vacated the award, however, on the authority of *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), which rejected, in the absence of congressional authorization, the private attorney general fee award theory. The court's order vacating its previous fee award was entered, "without prejudice to plaintiffs' right to move the Court for such an award [of fees] upon such grounds and under such circumstances as may be appropriate." Order of March 19, 1976. Plaintiffs now bring this renewed motion for attorney's fees on the authority of the Civil Rights Attorney's Fee Awards Act of 1976.

At the onset, we address one threshold issue advanced halfheartedly by defendant:[4] whether the instant action is still "pending" for the purposes of awarding

---

1. Plaintiffs also proffered a variety of other state and federal claims, not germane to the instant motion.

2. The court did not reach the plaintiffs' constitutional claims in awarding preliminary relief.

3. Attorney's fees were sought and awarded only against the defendant state officers, who will collectively be referred to in this memorandum as "state defendant."

4. State defendant has "serious doubts" as to whether the case may be regarded as "pending." Memorandum of Points and Authorities in Opposition to Plaintiffs' Renewed Motion for an Award of Attorney's Fees, p. 6. We treat defendant's "doubts" as a formal objection to fees on this ground.

attorney's fees. The Attorney's Fee Act applied to "all cases pending on the date of enactment as well as all future cases." H.R.Rep. No. 94–1558, 94th Cong., 2d Sess. 4, n. 6 (1976). *See Stanford Daily v. Zurcher,* 550 F.2d 464 (9th Cir. 1977). The issue is raised because this court's order issuing a preliminary injunction essentially resolved several of the primary legal issues raised by the parties and, since affirmance of the injunction on appeal, defendants have largely acquiesced to it as an authoritative ruling.

There can be little doubt but that the instant action remains "pending" for present purposes. First, no final judgment or order of dismissal has been entered. The case is thus formally within the jurisdiction of this court for purposes of awarding further relief, reconsideration of issues preliminarily decided, as well as the application of any changes in statutes governing the matters in controversy.

Second, the preliminary injunction issued by this court did not resolve all issues disputed by the parties. We need cite just one example: the parties remain in disagreement as to whether, even assuming that the state complies with federal relocation assistance and environmental requirements, construction of Project 238 may proceed in the absence of another "corridor public hearing," as may be required by 23 U.S.C. § 128 and its implementing regulations. Since there is no basis upon which to conclude that the state has irrevocably abandoned any plan to implement the disputed project, we conclude that the presence of a live controversy remains.

Finally, the imposition of attorney's fees at this time in no way prejudices the defendant. Attorney's fees were originally imposed in this case, in accordance with then prevailing standards, shortly after issuance of the preliminary injunction. Defendant was not relieved of that liability until the Supreme Court's 1975 ruling in *Alyeska.* Inasmuch as the Attorney's Fee Act was intended, inter alia, "to remedy anomalous gaps in our civil rights laws created by the United States Supreme Court's

recent decision in [*Alyeska*]," S.Rep. No. 94–1011, 94th Cong., 2d Sess. 1, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 5908, 5910, we find no injustice in the possibility of reimposing fee liability at this time. Moreover, the court's March 19, 1976, order withdrawing its previous fee award explicitly preserved plaintiffs' right to renew their motion for attorney's fees.

The Attorney's Fee Act provides in relevant part as follows:

> In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

42 U.S.C.A. § 1988 (West Supp.1977). As enacted, this provision is not entirely coextensive with the attorney's fee doctrine prevailing prior to *Alyeska.* By tying the availability of fees to success on specific statutory provisions, the Act is in some respects both more inclusive and less inclusive than the preexisting "private attorney general" approach. Our task, therefore, is to determine whether plaintiffs prevailed in an action to enforce an enumerated statute.

Plaintiffs premise their entitlement to attorney's fees on the basis of Revised Statute 1979, 42 U.S.C. § 1983 (1970), which provides that,

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in any action at law, suit in equity, or other proper proceeding for redress.

Plaintiffs contend that the court, in issuing its preliminary injunction on the basis of a violation of the Relocation Assistance Act, found in substance that the state defendant had deprived them of rights, privileges or immunities secured by the federal "laws," and thus that plaintiffs are entitled to fees

based upon a violation of section 1983 implicit in the court's previous findings. Alternatively, plaintiffs argue that they are entitled to fees premised upon meritorious constitutional claims previously asserted by them, but not reached by the court.

The availability of section 1983 to redress the deprivations, under color of state law, of rights, privileges, or immunities guaranteed by federal statutes has provoked substantial comment by courts[5] and commentators.[6] The derivation of section 1983 has been reviewed in detail by these and other sources,[7] and need not be exhaustively recounted here. Suffice it to say that, "despite this seemingly unambiguous language [of section 1983] authorizing both statutorily-based and constitutionally-based actions," *Blue v. Craig;* 505 F.2d at 834, uncertainty has arisen from two primary sources: first, from the unexplained addition of the words "and laws" following the words "the Constitution" in the 1875 recodification of

this section as part of the revised statutes,[8] and second, the presence of qualifying language in 28 U.S.C. § 1343(3) (1970), traditionally viewed as the "jurisdictional counterpart" to section 1983, that grants jurisdiction only to actions based on Acts of Congress "providing for equal rights."[9] Although there have been several lower court decisions, and substantial dicta from Supreme Court opinions, suggesting the applicability of section 1983 to statutorily based actions,[10] the issue has yet to be definitively resolved.[11]

We find the rationales advanced to narrow the scope of section 1983 from that clearly suggested by the statutory language to be unpersuasive. The first such rationale, suggested by the court in *Wynn v. Indiana State Dept. of Pub. Welfare,* 316 F.Supp. at 328–31, is that "the words 'and laws' were not in the original Civil Rights statute as adopted by Congress in 1871 but represented a gratuitous interpolation by

---

5. *See, e. g., Blue v. Craig,* 505 F.2d 830 (4th Cir. 1974); *Randall v. Goldmark,* 495 F.2d 356 (1st Cir.), *cert. denied,* 419 U.S. 879, 95 S.Ct. 144, 42 L.Ed.2d 119 (1974); *McCall v. Shapiro,* 416 F.2d 246 (2d Cir. 1969); *Gomez v. Florida State Employment Serv.,* 417 F.2d 569 (5th Cir. 1969); *Bomar v. Keyes,* 162 F.2d 136 (2d Cir.), *cert. denied,* 332 U.S. 825, 68 S.Ct. 166, 92 L.Ed. 400 (1947); *Mathes v. Nugent,* 411 F.Supp. 968 (N.D.Ill.1976); *Wynn v. Indiana State Dept. of Pub. Welfare,* 316 F.Supp. 324 (N.D.Ind.1970).

6. *See, e. g.,* Cover, *Establishing Federal Jurisdiction in Actions Brought to Vindicate Statutory (Federal) Rights When No Violations of Constitutional Rights are Alleged* (pt. 1), 2 Clearinghouse Rev. 5 (1969); Herzer, *Federal Jurisdiction Over Statutorily-Based Welfare Claims,* 6 Harv.C.R.–C.L.L.Rev. 1 (1970); Note, *Federal Jurisdiction Over Challenges to State Welfare Programs,* 72 Colum.L.Rev. 1404 (1972); Note, *The Propriety of Granting a Federal Hearing for Statutorily Based Actions Under the Reconstruction-Era Civil Rights Acts: Blue v. Craig,* 43 Geo.Wash.L.Rev. 1343 (1975).

7. *See Examining Board of Engineers v. Flores de Otero,* 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1975); *Lynch v. Household Fin. Corp.,* 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972); *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961).

8. The section previously referred only to deprivations of rights secured by "the Constitution," but the 1875 statutory revision, which purport-

ed to be organizational rather than substantive, see Herzer, *supra* note 6, at 5–6, added the words "and laws."

9. 28 U.S.C. § 1343(3) provides as follows: "The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person: . . . (3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;"

10. In *Lynch v. Household Fin. Corp.,* for example, the court stated explicitly that, "[a]lthough the original substantive provision [predecessor to § 1983] had protected rights, privileges, or immunities secured by the Constitution, the provision in the Revised Statutes was enlarged to provide protection for rights, privileges, or immunities secured by federal law as well." 405 U.S. at 543, n. 7, 92 S.Ct. at 1117. See other authorities collected by the court in *Blue v. Craig,* 505 F.2d at 834–36.

11. *See Hagans v. Lavine,* 415 U.S. 528, 533–34, n. 5, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Rosado v. Wyman,* 397 U.S. 397, 405 n. 7, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); *King v. Smith,* 392 U.S. 309, 312 n. 3, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

the draftsman of the 1875 Revised Statutes, an interpolation which, even though approved in the adoption of the Revised Statutes could not enlarge the scope of the original statute." *Blue v. Craig*, 505 F.2d at 834. Under the *Wynn* view, therefore, section 1983 must be interpreted solely in accordance with, "the *language of the original statute.*" *Wynn v. Indiana State Department of Public Welfare*, 316 F.Supp. at 328 (emphasis in original).

■ The reasoning in *Wynn* has been repudiated implicitly by the Supreme Court itself in *Examining Board of Engineers v. Flores de Otero*, 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1975). At issue there was the language of section 1983 creating a cause of action to redress deprivations arising under color of *territorial* law. Like the "and laws" language at issue here, language regarding the territories did not appear in section 1983 until Congress, "added, without explanation, the words 'or Territory' in the 1874 codification of the United States Statutes. Rev.Stat. § 1979 (1874)." Id. at 582, 96 S.Ct. at 2272.[12] Nevertheless, the Supreme Court had little difficulty in giving full effect to the revised statutory language as having expressed the intent of Congress to enlarge the scope of section 1983. We see no reason to do otherwise in the instant case.

The second major argument for a narrow reading of section 1983 is that the language of that section's jurisdictional counterpart, 28 U.S.C. § 1343(3), operates in some manner to restrict the scope of the substantive right itself. Until the 1875 revision, the predecessors of sections 1983 and 1343(3) were both contained in Section 1 of the Civil Rights Act of 1871, 17 Stat. 13, and were clearly coextensive. The substantive and jurisdictional provisions were separated in the 1874 codification, with the words "and laws" being added to what is now section 1983, while the "equal rights" language was added to Revised Statute 629(16), the predecessor of section 1343(3). Thus, it may be argued that R.S. 629 made explicit what was implicit in section 1983: that the substantive right attaches only to statutes, "providing for equal rights."[13]

■ Such a theory is untenable, however, in view of the fact that R.S. 629 (now section 1343(3))—which contained the "equal rights" language—was only one of two jurisdictional statutes included in the revised statutes to parallel section 1983. Revised Statute 629 pertained to the jurisdiction of the *circuit* courts, which at that time shared original jurisdiction with the district courts. The jurisdiction accorded the district courts under section 563(12) of the revised statutes was broader, and included jurisdiction over actions to redress deprivations of rights secured, "by the Constitution of the United States to persons within the jurisdiction thereof."[14] The language was, "identical in scope with the expanded substantive section [i. e., present section 1983]." *Lynch v. Household Finance Corporation*, 405 U.S. at 543–44 n. 7, 92 S.Ct. at 1117. Thus, the language of R.S. 629 certainly cannot be viewed as imposing a limitation on the substantive scope of section 1983 at the time the words "and laws" were added; indeed, the breadth of R.S. 563 suggests precisely the contrary.

It is true that, in the 1911 revision of the judicial code creating a single federal trial court, jurisdiction over actions brought to enforce section 1983 was consolidated in one code section adopting the language now found in section 1343(3) rather than the broader language of section 563. *Id.* The origins of that choice are obscure, and have provoked a spirited debate as to whether Congress sought thereby to restrict the jurisdiction of the district court, or whether section 1343(3) should be read as coexten-

---

**12.** The Supreme Court noted that, "[a]nother change effected with the codification, and without explanation, was the addition in § 1979 of the words 'and laws' following the words 'the Constitution.'" Id. at 583, 96 S.Ct. at 2272.

**13.** *See* Herzer, *supra*, note 6, at 8.

**14.** Id. at 6.

sive with section 1983 despite its apparently more restrictive language.[15]

Whatever Congress may have intended with respect to the jurisdiction of the district courts, however, we find no basis to infer thereby a *sub silentio* amendment to the substantive scope of section 1983 itself. It may be that Congress sought to limit the availability of section 1343(3) to actions seeking to enforce equal rights legislation, while providing for jurisdiction over other section 1983 actions only where the requisite amount in controversy is shown under 28 U.S.C. § 1331,[16] either on the theory that suits for equal rights are less capable of pecuniary valuation than other actions, *cf.* *Hague v. CIO*, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939), or because this is a class of legislation peculiarly appropriate for federal jurisdiction irrespective of the amount in controversy. In any event, there is no reason to believe that Congress intended thereby to contract substantially the substantive scope of the rights previously secured by section 1983, if jurisdiction could be properly founded upon section 1331 or another basis. Had Congress so intended, it surely would have found a means of implementation less subtle than the retention of R.S. 629 as part of a general reorganization of the federal trial courts, supported by an insubstantial and inconclusive legislative history.

■ Accordingly, we conclude that section 1983 is available to redress deprivations under color of state law of rights, privileges, and immunities secured by federal statutes, as well as the Constitution.[17] It follows that parties may recover attorney's fees under the terms of the Attorney's Fee Act for violations of section 1983, even if their claim is premised solely upon violations by state officials of federal statutes.

Such a reading of the Attorney's Fee Act is entirely consistent with the intent of Congress, as disclosed by the legislative history of that Act. Thus, for example, Congressman Drinan, an author of the House bill, pointed out that section 1983 applies to suits based upon violations of federal statutes, as well as the Constitution: "[u]nder applicable judicial decisions, Section 1983 authorizes suits against state and local officials based upon Federal statutory as well as constitutional rights. For example, *Blue against Craig*, 505 F.2d 830 (4th Cir. 1974)." 122 Cong.Rec. H12,159 (daily ed. Oct. 1, 1976). Similarly, in elaborating upon the patchwork quality of existing attorney's fee statutes, the Senate report noted that, "fees are allowed in a suit under Title II of the 1964 Civil Rights Act challenging discrimination in a private restraint, but not in suits under 42 U.S.C. § 1983 redressing violations of the Federal Constitution *or laws*." S.Rep. No. 94–1011, 94th Cong.2d Sess. 4, U.S.Code Cong. & Admin.News, pp. 5908, 5911 (emphasis added). *See also* (remarks of Rep. Seiberling) 122 Cong.Rec. H12,165 (daily ed. Oct. 1, 1976); 122 Cong.Rec. S17052 (daily ed. Sept. 29, 1976) (remarks of Sen. Kennedy); *Bond v. Stanton*, 555 F.2d 172 (7th Cir. 1977).

■ We also conclude that this court has jurisdiction to grant relief based upon plaintiffs' section 1983 statutory claim in the instant case. In so holding, we need not reach the controversial issue of whether such jurisdiction may be founded independently upon 28 U.S.C. §§ 1343(3) or 1343(4). Rather, jurisdiction over plaintiffs' section

---

15. Compare *Blue v. Craig, supra,* and *Gomez v. Florida State Employment Service, supra,* with *Randall v. Goldmark, supra, McCall v. Shapiro, supra,* and *Gonzalez v. Young,* 560 F.2d 161 (3d Cir., 1975).

16. 28 U.S.C. § 1331, the general federal question provision, reads in relevant part as follows: "(a) The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity." 28 U.S.C.A. § 1331(a) (West Supp.1977).

17. Section 1983 will be unavailable, of course, where Congress has provided an exclusive alternative remedy, but we find no such remedy in this case.

1983 statutory claim attaches in this case pendent to the court's clear jurisdiction to resolve plaintiffs' *constitutional* claims pursuant to 28 U.S.C. § 1343(3). See *Hagans v. Levine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974).

In support of their third cause of action, plaintiffs alleged that state defendant's denial of relocation assistance deprived them of equal protection of the laws as guaranteed by the Fourteenth Amendment to the United States Constitution. The facts relied upon by plaintiffs in their complaint and accompanying memoranda in support of their claim include assertions that: (1) the proposed project was planned for a location disproportionately populated by persons of minority race; (2) alternative locations for the highway, not imposing a disproportionate impact upon minorities, were available but ignored by defendant; (3) there has been an historic pattern in California and elsewhere of locating freeways and other public works in low income areas populated disproportionately by minorities; (4) defendant's failure to provide relocation assistance was in violation of statute, and part of a pattern and practice of ignoring statutorily imposed relocation assistance standards applicable to various projects; (5) due to severe racial discrimination in the housing market surrounding the path of the proposed freeway, the adverse effects of displacement were felt disproportionately by minorities compared to other displacees; and (6) that, as a result of defendant's actions, a substantial number of minorities would be forced to move entirely out of the communities served by the proposed freeway.

■ A federal claim is insubstantial in a jurisdictional sense only if it is, " 'so at-

tenuated and unsubstantial as to be absolutely devoid of merit.' " *Hagans v. Levine*, 415 U.S. 528, 536, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974). We think the claims raised by plaintiffs in the instant case are clearly sufficient under that standard to raise a substantial federal question as to whether the planning and implementation of the proposed freeway, as well as the denial of relocation assistance, was in violation of the Fourteenth Amendment. This is so even though, as defendant notes, plaintiffs failed to allege specifically in their complaint that defendant's conduct was "racially motivated." See *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). It is enough that the facts asserted by plaintiffs are sufficient, if true, to permit an inference of intentional discrimination. *See* note 20, *infra.*[18]

■ That plaintiffs' equal protection claim and statutorily based section 1983 claim derive from a "common nucleus of operative fact," *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), also seems apparent. Both arise, of course, from the same transaction or occurrence—i. e., the construction of Project 238—and both involve similar facts regarding the planning and development of the proposed project. Indeed, even defendant's violation of the Relocation Assistance Act is relevant to both claims. Certainly, these claims are of such a character that, "[plaintiff] would ordinarily be expected to try them all in one judicial proceeding." Id. at 725, 86 S.Ct. at 1138.

Accordingly, we hold that the court has pendent jurisdiction to entertain plaintiffs' statutorily based section 1983 claim, and to award attorney's fees thereon.[19]

---

**18.** In issuing a preliminary injunction, the court observed that, "[f]rom the evidence thus far presented it also appears that, despite sincere efforts, the State has an inadequate relocation assistance program . . . . The State, albeit in good faith, has failed to comply with the federal . . . statutes and regulations." *La Raza Unida v. Volpe*, 337 F.Supp. at 233. This preliminary observation, while perhaps suggesting that plaintiffs were unlikely to prevail upon their equal protection claim, does

nothing of course to defeat the court's *jurisdiction* over that claim.

**19.** In view of the disposition above, we need not consider whether plaintiffs' statutorily based section 1983 claim might find a jurisdictional basis under 28 U.S.C. § 1331, either as satisfying the amount in controversy requirement, or as pendent to plaintiffs' claim against federal officials. *But cf. Aldinger v. Howard,*

Having concluded that statutory claims under section 1983 fall within the ambit of the Attorney's Fee Act, and that the court has jurisdiction to consider plaintiffs' claim, we now consider whether plaintiffs have prevailed upon a section 1983 claim in the instant case.

 In its memorandum and order issuing a preliminary injunction, the court held that federal law had imposed upon state defendant a present duty to comply with the provisions of the Relocation Assistance Act. With respect to projects subject to its terms, that Act imposes upon state officers, inter alia, a mandatory obligation to determine that, "comparable, decent, safe, and sanitary replacement housing will be available for displaced persons prior to displacement." H.R.Rep. No. 91–1656, 91st Cong., 2d Sess., *reprinted in* [1970] U.S.Code & Admin.News, pp. 5850, 5852. The intended beneficiaries of that duty clearly include plaintiffs and the class they represent, who are assured by federal law that they will not be displaced from their homes and businesses in the absence of adequate relocation facilities and other assistance. In embarking upon a program of displacement pursuant to Project 238, without making the determinations required by federal law, we think it clear that state defendant, acting under color of state law, deprived plaintiffs and the class they represent of, "rights, privileges or immunities secured by the . . . laws." Accordingly, we conclude that a violation of 42 U.S.C. § 1983 was shown.[20]

Finally, we turn to the defendant's contention that an award of fees is barred by the Eleventh Amendment. Plaintiffs argue that a fee award is permissible either because awards of attorney's fees against state officers are not violative of the Eleventh Amendment in general, or because an award in this case is made pursuant to legislation passed by Congress under powers conferred on it by Section Five of the Fourteenth Amendment.

Since *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), which held the Eleventh Amendment a bar to damage suits against state officials for past violations of federal law, the lower federal courts have been divided as to the applicability of that Amendment to awards of attorney's fees in actions brought against state officials for *prospective* relief. See *Souza v. Travisono,* 512 F.2d 1137 (1st Cir.), *vacated on other grounds* 423 U.S. 809, 96 S.Ct. 19, 46 L.Ed.2d 29 (1975); *Bond v. Stanton,* 528 F.2d 668 (7th Cir.), *vacated and remanded,* 429 U.S. 973, 97 S.Ct. 479, 50 L.Ed.2d 581 (1976), subsequent opinion 555 F.2d 172 (7 Cir. 1977); *Skehan v. Board of Trustees,* 538 F.2d 53 (3d Cir. 1976); *Jordan v. Fusari,* 496 F.2d 646 (2d Cir. 1974); cf. *Jordon v. Gilligan,* 500 F.2d 701 (6th Cir. 1974).

The issue was decided by this circuit in *Brandenburger v. Thompson,* 494 F.2d 885 (9th Cir. 1974), which relied upon the Supreme Court's summary affirmance of *Sims v. Amos,* 340 F.Supp. 691 (M.D.Ala.), *aff'd,* 409 U.S. 942, 93 S.Ct. 290, 34 L.Ed.2d 215 (1972), for the proposition that the Eleventh Amendment is no bar to an award of attorney's fees. Defendant contends that the Supreme Court itself cast doubt upon the binding effect of *Sims* in *Alyeska,* 421 U.S. at 269–71 n. 44, n. 46, 95 S.Ct. 1612, and thus argues that this court is free to disregard *Brandenburger* and hold the Eleventh Amendment to be a bar.

Even assuming that the court is free, despite *Brandenburger,* to consider freshly the Eleventh Amendment issue in light of *Alyeska,* we find no basis upon which to reach a different result.

427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976).

**20.** The fact that plaintiffs did not specifically allege in their complaint a violation of section 1983 premised upon noncompliance with federal statutes does not bar relief. Modern rules of notice pleading require only a statement of facts upon which relief may be granted, not a definitive statement as to the plaintiffs' theory of the case. See *United States v. Howell,* 318 F.2d 162, 166 (9th Cir. 1963); 2A Moore's Federal Practice ¶ 8.14 (2d ed. 1948); Fed.R.Civ.P. 54(c).

In *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1975), the Supreme Court held that the Eleventh Amendment does not prohibit federal courts from awarding money damages and attorney's fees against state governments as provided by Title VII of the Civil Rights Act of 1964, as amended. In reversing the lower courts' denial of money damages, the Court stated, "[W]e think that the Eleventh Amendment, and the principle of state sovereignty which it embodies, [citation omitted] are necessarily limited by the enforcement provisions of § 5 of the Fourteenth Amendment." Referring specifically to the award of attorney's fees the Court added that, "given the express congressional authority for such an award in a case brought under Title VII, it follows necessarily from our holding in No. 75–251 [the award of money damages] that Congress' exercise of power in this respect is also not barred by the Eleventh Amendment." Id. at 457, 96 S.Ct. at 2672 (footnote omitted).

 In the instant case there can be no serious dispute that Congress' enactment of the Civil Rights Attorney's Fees Awards Act was pursuant to section five of the Fourteenth Amendment, and that it was intended to apply to awards that ultimately might be paid out of state treasuries.

> Fee awards are therefore provided in cases covered by S. 2278 in accordance with Congress' powers under, inter alia, the Fourteenth Amendment, Section 5. As with cases brought under 20 U.S.C. § 1617, the Emergency School Aid Act of 1972, defendants in these cases are often State or local bodies or State or local officials. In such cases it is intended that the attorneys' fees, like other items of costs, will be collected either directly from the official, in his official capacity, from funds of his agency or under his control, or from the State or local government (whether or not the agency or government is a named party).

S.Rep. No. 94–1011, 94th Cong., 2d Sess. 5, *reprinted in* [1976] U.S.Code Cong. & Admin.News, pp. 5908, 5913 (footnotes omitted). In light of the limitations upon the Eleventh Amendment enunciated in *Fitzpatrick* and their clear applicability to this case, an award of attorney's fees is appropriate. *Martinez Rodriquez v. Jimenez,* 551 F.2d 877, 879 (1st Cir. 1977); *Finney v. Hutto,* 548 F.2d 740, 742 (8th Cir. 1977), *petition for cert. filed,* 46 U.S.L.W. 3093 (U.S. May 5, 1977) (No. 76–1660).

A similar conclusion would be warranted even in the absence of the Supreme Court's decision in *Fitzpatrick.* As the legislative history quoted above suggests, attorney's fees are outside the scope of the Eleventh Amendment. Like costs, which may be assessed against the states, *see Fairmont Creamery Co. v. Minnesota,* 275 U.S. 70, 48 S.Ct. 97, 72 L.Ed. 168 (1927), attorney's fee awards involve an assessment ultimately paid from the state treasury, but one that is small in comparison to a state's potential pecuniary liability for past damages. Like costs, attorney's fees are a necessary incident to the procurement of *prospective* compliance by state officials with federal law. Thus attorney's fees, unlike damage awards, are not a form of compensation for injuries suffered from past conduct of the state, but rather constitute, "a necessary consequence of compliance in the future with a substantive federal-question determination." *Edelman v. Jordan,* 415 U.S. at 668, 94 S.Ct. at 1358. "Both [costs and attorney's fees] are in a similar relationship to the main litigation and both should stand or fall together." *Souza v. Travisono,* 512 F.2d at 1140. *See also Fitzpatrick v. Bitzer,* 427 U.S. at 460, 96 S.Ct. at 2673 (Stevens, J., concurring) ("With respect to the fee issue, even if the Eleventh Amendment were applicable, I would place fees in the same category as other litigation costs. Cf. *Fairmont Co. v. Minnesota,* 275 U.S. 70 [48 S.Ct. 97, 72 L.Ed. 168].").

For the foregoing reasons, we conclude that plaintiffs are entitled to an award of attorney's fees under the Attorney's Fee Act, and that such an award is not barred by the Eleventh Amendment. Plaintiffs shall submit to the court evidentiary data supporting their claim to attorney's fees.

SO ORDERED.